J-S18023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.D. AND N.S. | : | |
| | : | |
| | : | |
| APPEAL OF: L.T. | : | No. 2090 MDA 2019 |

Appeal from the Order Entered November 22, 2019
In the Court of Common Pleas of Lycoming County
Civil Division at No(s): FC-2019-0020448-CU

BEFORE: KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED MAY 12, 2020**

Appellant, L.T. ("Maternal Grandmother"), appeals from the order entered in the Lycoming County Court of Common Pleas, which dismissed for lack of standing, her petition to intervene in a custody action between M.D. ("Paternal Grandmother") and biological parents C.D. ("Father")[1] and N.S. ("Mother"), regarding M.R.D. (born in June 2018) ("Child"). We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. On May 29, 2019, Paternal Grandmother filed a petition for emergency or special custody relief concerning Child. Paternal Grandmother alleged, *inter alia*, that

---

[*] Former Justice specially assigned to the Superior Court.

[1] The record indicates that Father plans to contest paternity.

approximately two weeks earlier, Father had called Paternal Grandmother and told her Child was without proper care and housing. Specifically, Father told Paternal Grandmother the house lacked running water, food, and diapers. Paternal Grandmother said she contacted Children and Youth Services ("CYS"), and CYS permitted Paternal Grandmother to take Child home with her.

Paternal Grandmother further claimed that on the day prior to filing her petition, she received a phone call from Father, in which Father was screaming "protect my daughter," because four individuals had threatened violence against Father, Mother, Child, and Paternal Grandmother. Paternal Grandmother said she contacted police. Paternal Grandmother also alleged that Mother and Father are drug users. Paternal Grandmother attached to her petition a statement signed by Mother, Father, and witnesses, consenting to Paternal Grandmother's temporary custody of Child as of May 25, 2019. For these reasons, Paternal Grandmother sought sole physical and legal custody of Child.

On May 29, 2019, a family court hearing officer granted Paternal Grandmother temporary sole physical custody of Child, pending a hearing scheduled for June 12, 2019. On June 12, 2019, the court conducted a custody hearing. The court entered an order that date stating the court heard serious allegations concerning parents' ability to care for Child, some of which were memorialized by a CYS caseworker. The court further stated that during

the hearing, the parties reached an agreement regarding custody of Child. Thus, the court entered an order, by agreement of the parties, for Paternal Grandmother to retain primary physical and legal custody of Child, subject to periods of visitation by Mother and Father. The court scheduled a review hearing for July 23, 2019.

On July 12, 2019, Maternal Grandmother filed a petition to intervene, seeking primary physical and shared legal custody of Child. Maternal Grandmother indicated she has lived in Tennessee since 2015, and admitted that she had not yet met Child. Nevertheless, Maternal Grandmother maintained she had the financial and physical means to parent Child, and was ready and willing to assume responsibility for Child. Maternal Grandmother asserted parents' inability to care for Child, and also claimed Paternal Grandmother was unable to properly care for Child based on her physical infirmities.[2]

On July 29, 2019, Paternal Grandmother filed an answer and new matter to Maternal Grandmother's petition to intervene, opposing Maternal Grandmother's request for custody and claiming, *inter alia*, Maternal Grandmother lacked standing to intervene. The court scheduled a hearing on Maternal Grandmother's petition to intervene for August 28, 2019.

Meanwhile, on July 23, 2019, the court held a review hearing, at which

_____

[2] Maternal Grandmother later withdrew this allegation against Paternal Grandmother.

Mother, Father, Paternal Grandmother, and a CYS caseworker were present. The next day, the court entered an order by agreement of the parties, continuing sole legal and primary physical custody of Child with Paternal Grandmother, subject to periods of visitation by Mother and Father. The court scheduled another review hearing for October 16, 2019.

Maternal Grandmother subsequently filed an application to continue the hearing on her petition to intervene, in light of Paternal Grandmother's agreement to let Maternal Grandmother visit Child at Paternal Grandmother's home. The court continued the hearing on Maternal Grandmother's petition to intervene until November 5, 2019.

The court held another review hearing on October 22, 2019, which Paternal Grandmother and Father attended. Mother did not attend the hearing. Following the hearing, the court entered an order, by agreement of the parties, continuing sole legal and primary physical custody of Child with Paternal Grandmother, subject to periods of visitation by Mother. Father indicated that he planned to challenge paternity, so he would not be exercising visitation rights.

The court held a hearing on Maternal Grandmother's petition to intervene on November 5, 2019.[3] At the hearing, the court initially asked Mother if she had a position regarding Maternal Grandmother's petition to

---

[3] Mother, Maternal Grandmother, and Paternal Grandmother attended the hearing. Although Father was served with notice, he did not attend.

- 4 -

intervene. Mother testified that she had discussed the petition to intervene with Maternal Grandmother and was in agreement with Maternal Grandmother's intent to pursue custody. (N.T. Hearing, 11/5/19, at 5). Counsel for Maternal Grandmother then offered the following argument:

> [Maternal Grandmother] is the biological mother of [Mother], and biological grandmother to the subject child[.] She did not have a relationship with [Child] prior to on or about August of 2019, which I will go into more depth with respect to that in a moment. The reason for the Petition to Intervene was due to the reasons contained, again, on information received and as outlined in the petition. With respect to standing, [Maternal Grandmother] being the biological grandmother, she did—again, she did not see or have any contact with [C]hild, but the argument would be made that nor did [Paternal Grandmother] until she received custody of [C]hild via emergency custody on or about May 2019. [Maternal Grandmother] would [indicate] that she does—she has consulted with [Mother], who's indicated that she would like [Maternal Grandmother] to enter, have standing so that she can have, develop, and cultivate a relationship with [Child].
>
> The reason for the issue at bar, is the—pursuant to [23 Pa.C.S.A. §] 5324, which we'll summarize by way of argument following the hearing, but at the end of the day [Maternal Grandmother] would [indicate] that she, in addition to her willingness to assume responsibility for the child, does have standing because the relationship—even though the contact of [C]hild came after the Petition to Intervene and was graciously afforded by [Paternal Grandmother] in [Paternal Grandmother's] home, she has had occasion to meet [C]hild and is now in custody of another child born of [Mother], but not [Father]. … A private custody agreement or arrangement was made where primary physical and shared legal was awarded to [Maternal Grandmother] who does reside in the State of Tennessee and does intend after today's proceeding to return to the State of Tennessee where she resides with her husband and—… [f]our other children. From our [perspective], that's all we have.

- 5 -

(*Id.* at 6-8).

Counsel for Paternal Grandmother disputed only the portion of that argument regarding Paternal Grandmother's contact with Child. Counsel for Paternal Grandmother claimed Paternal Grandmother had "a number of contacts" with Child prior to receiving custody. (*Id.* at 9). Mother disagreed, explaining Paternal Grandmother had contact with Child "maybe twice" before obtaining custody. (*Id.* at 12). Mother admitted those contacts were with her consent. (*Id.*) Paternal Grandmother claimed she saw Child regularly when Child was about five or six months old, during periods when Father was supervising Child and Mother was not present. (*Id.* at 14-15). Paternal Grandmother admitted she saw Child only twice after Child was six months old until Paternal Grandmother obtained emergency custody. (*Id.* at 16). At the conclusion of the hearing, the court deferred ruling pending an informal letter from counsel on the standing issue.

On November 22, 2019, the court denied Maternal Grandmother's petition to intervene. Specifically, the court ruled Maternal Grandmother lacked standing to pursue custody under 23 Pa.C.S.A. § 5324(3) (which grants grandparents who are not *in loco parentis*[4] to the child, the right to file an action for any form of custody if certain other conditions are met), because

---

[4] Prior to the hearing, Maternal Grandmother conceded she did not stand *in loco parentis* to Child.

Maternal Grandmother could not prove she had a "relationship with the child [that] began with the consent of a parent of the child or under a court order," as required under Section 5324(3)(i). The court stated, in relevant part:

> It is undisputed that [M]aternal [G]randmother is willing to assume parental responsibility of [C]hild, thus satisfying subsection (ii) of Section 5324(3). However, this [c]ourt cannot find that there was a relationship between [Maternal Grandmother] and [C]hild that began with either the consent of the parent or by court order. [Maternal Grandmother], by her own admission in the pleadings, had never even met [C]hild at the time of the filing of the petition. Counsel for [Maternal Grandmother] argues that although perhaps not specifically stated, it is strongly inferred that Mother consents to [Maternal Grandmother] having the opportunity to develop a relationship with [C]hild, given that Mother voluntarily gave [Maternal Grandmother] primary legal and physical custody of her recently born infant.
>
> Unfortunately, the plain language of this portion of the statute is also unambiguous and therefore must be strictly construed. An inference of a willingness on the part of a parent to consent to a potential relationship between the child and grandparent in the future is insufficient to satisfy the statutory requirement for standing to pursue custody in the present. Accordingly, the Petition to Intervene and Modify Custody filed on July 12, 2019, is hereby **DENIED**.
>
> The [c]ourt notes that this is a situation where both parents have struggled with issues that have resulted in serious concerns regarding their ability to care for [C]hild. This [C]hild deserves the love and support of every family member who is willing to be involved in her life. Although there is no legal basis under which [Maternal Grandmother] may pursue custody of [C]hild, and the [c]ourt has no authority to award periods of visitation to her, [P]aternal [G]randmother is strongly encouraged to include [Maternal Grandmother] in [C]hild's life to ensure that [C]hild develops and maintains a relationship with her mother's side of the family, including her half-sibling who is in [Maternal Grandmother's] primary physical custody.

(Order, filed 11/22/19, at 4-5). On December 20, 2019, Maternal Grandmother timely filed a notice of appeal[5] and contemporaneous concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).

Maternal Grandmother raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED IN ITS ANALYSIS AND APPLICATION OF **G.A.P. V. J.M.W.**, 194 A.3D 614 [(PA.SUPER. 2018)] AS IT PERTAINS TO THE CASE *SUB JUDICE*?
>
> WHETHER THE TRIAL COURT ERRED IN ITS CONCLUSION THAT THERE IS NO LEGAL BASIS UNDER WHICH THE PETITIONER MAY PURSUE CUSTODY OF THE CHILD AT ISSUE?
>
> WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT THE COURT HAD NO AUTHORITY TO AWARD PERIODS OF VISITATION TO MATERNAL GRANDMOTHER?

(Maternal Grandmother's Brief at 4).

We address Maternal Grandmother's issues together. Maternal Grandmother argues that the overarching purpose of the Child Custody Act, as it relates to standing and custody for grandparents, is to grant grandparents standing in custody matters, and not to create a situation where grandparents are essentially in a "race to file" to receive custody. Maternal Grandmother asserts that this Court in **G.A.P., supra** recognized the

_____

[5] **See K.C. v. L.A.**, 633 Pa. 722, 128 A.3d 774 (2015) (holding order denying petition to intervene in custody action is appealable as collateral order); Pa.R.A.P. 313 (defining collateral orders).

- 8 -

absurdity, unreasonableness, and contradiction to public policy that would result from a court-sanctioned system that denies a trial court the opportunity to determine which grandparent can best serve the child's needs, simply because one grandparent was able to file a custody petition first. Maternal Grandmother contends the trial court improperly prevented her from seeking custody of Child, not based on a careful weighing of the requisite custodial factors, but solely because she "lost the race to the courthouse." Maternal Grandmother emphasizes that Paternal Grandmother was in a more advantageous position to file a petition seeking custody first, due to her geographic proximity to Child. Maternal Grandmother submits the trial court erred by ignoring the public policy concerns outlined in *G.A.P.*

Additionally, Maternal Grandmother insists she has clearly manifested a willingness to assume responsibility for Child. Maternal Grandmother further posits that Child is substantially at risk as a result of parents' issues with substance abuse and criminal behavior. Consequently, Maternal Grandmother suggests the sole dispute in this case is whether she began a relationship with Child with the consent of Child's parents. Maternal Grandmother stresses that the primary purpose in all custody determinations is the best interest of the child, and she highlights the government's role to ensure children are not deprived of beneficial relationships with their grandparents. Maternal Grandmother claims the trial court's strict statutory interpretation in these circumstances produced an absurd result that not only belies the General

Assembly's intention regarding the Child Custody Act, but also goes against the best interests of Child by depriving Child of a relationship with Maternal Grandmother.

Maternal Grandmother avers that Father has refused to take any meaningful part in Child's life, and actually has expressed his intent to contest paternity. Maternal Grandmother also suggests Mother has conducted herself in a way that affirmatively indicates consent to Maternal Grandmother's relationship with Child and has taken no action that indicates a lack of consent to their relationship. Maternal Grandmother maintains that Mother gave Maternal Grandmother primary physical custody of another child (Child's half-sibling), which is a clear indication that Mother would not contest Maternal Grandmother's pursuit of custody of Child. Maternal Grandmother concludes that both parents, by their actions, have expressly consented to Maternal Grandmother's relationship with Child, and the trial court erred by concluding she lacked standing to pursue custody under Section 5324(3)(i). For the following reasons, we agree Maternal Grandmother has standing to pursue custody of Child.

Our review of this case implicates the following legal principles:

> An issue regarding standing is a threshold issue that is a question of law. Moreover, the interpretation and application of a statute is also a question of law. As with all questions of law, we must employ a *de novo* standard of review and a plenary scope of review to determine whether the court committed an error of law.
>
> When interpreting a statute, this court is constrained by the

rules of the Statutory Construction Act of 1972 (the "Act"). 1 Pa.C.S. §§ 1501-1991. The Act makes clear that the goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly while construing the statute in a manner that gives effect to all its provisions. *See* 1 Pa.C.S. § 1921(a). The Act provides: "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Moreover, it is well settled that the best indication of the General Assembly's intent may be found in a statute's plain language. Additionally, we must presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable and does intend to favor the public interest over any private interest. *See* 1 Pa.C.S. § 1922(1) and (5).

*G.A.P., supra* at 616-17 (some internal citations and quotation marks omitted).

The Child Custody Act provides standing for grandparents in custody cases, in relevant part, as follows:

### § 5324. Standing for any form of physical custody or legal custody

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child:

   (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

   (ii) who assumes or is willing to assume responsibility for the child; and

- 11 -

(iii)    when one of the following conditions is met:

(A)        the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B)        the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C)        the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

(4)    Subject to paragraph (5), an individual who establishes by clear and convincing evidence all of the following:

(i)    The individual has assumed or is willing to assume responsibility for the child.

(ii)    The individual has a sustained, substantial and sincere interest in the welfare of the child.  In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

(iii)    Neither parent has any form of care and control of the child.

(5)    Paragraph (4) shall not apply if:

(i)    a dependency proceeding involving the child has been initiated or is ongoing; or

(ii)    there is an order of permanent legal custody under 42 Pa.C.S. § 6351(a)(2.1) or (f.1)(3) (relating to disposition of dependent child).

23 Pa.C.S.A. § 5324.

In **G.A.P., supra**, the paternal grandparents filed an appeal from an order denying their petition to intervene for lack of standing. In their petition to intervene, the paternal grandparents had asserted standing to pursue custody of the child, *inter alia*, because "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity" pursuant to Section 5324(3)(iii)(B). The child's maternal great-grandparents subsequently filed preliminary objections asserting the paternal grandparents lacked standing because the child was not currently "substantially at risk" since the maternal great-grandparents had primary physical custody of the child. The trial court agreed and sustained the preliminary objections. **G.A.P., supra** at 616.

On appeal, this Court reversed, explaining:

> Instantly, Maternal Great-Grandparents concede that Paternal Grandparents are the grandparents of Child, have a relationship with Child that began with the consent of a parent, and are willing to assume responsibility for Child pursuant to 23 Pa.C.S. § 5324(3)(i) and (ii). Therefore, the only question is whether "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity" pursuant to 23 Pa.C.S. § 5324(3)(iii)(B).
>
> \*    \*    \*
>
> Section 5324(3)(iii)(B) confers standing upon grandparents in cases where "the child is substantially at risk **due to parental** abuse, neglect, drug or alcohol abuse or incapacity," when the requirements of Section 5324(3)(i) and (ii) are also met. 23 Pa.C.S. § 5324(3)(iii)(B) (emphasis added). The words of this provision are clear and unambiguous, and they do not make an exception for the custodial situation of a child. Simply, the plain language of the statute confers standing to grandparents when a child is

- 13 -

substantially at risk due to ongoing parental behaviors.

In this case, the trial court previously determined that the conditions necessary under Section 5324(3)(iii)(B), namely ongoing parental behaviors that would put Child at substantial risk, were present in order to grant standing to Maternal Great-Grandparents. Since that determination, there has been no change in the substantial risk that the parents created.

In an analogous case, *Martinez v. Baxter*, 725 A.2d 775, 778 (Pa.Super. 1999), *aff'd sub nom.* *R.M. v. Baxter ex rel. T.M.*, 565 Pa. 619, 777 A.2d 446 (2001), this Court interpreted a previous version of the statute, which provided a grandparent standing to pursue custody if that grandparent "deem[ed] it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness." This Court held that the fact that a child had been declared dependent and placed in custody of the state, thus alleviating immediate safety concerns, did not negate the grandmother's standing to seek custody. *Id.* at 778. We concluded that it was "of no moment" that child had only been adjudicated dependent and parental rights were not terminated or relinquished because it was still possible for a parent to seek reunification with the child. *Id.* As a result, the parents still created an ongoing risk to the child and the grandmother had standing. *Id.*

Applying this Court's reasoning in *Martinez, supra*, to the instant case, it is irrelevant for purposes of standing that the trial court has already granted custody to Maternal Great-Grandparents. Since parental rights have not been terminated or relinquished, it is possible for either parent to seek custody of Child. This possibility creates an ongoing risk to Child. *See Martinez, supra* at 778.

Moreover, we must presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable and does intend to favor the public interest over any private interest. *See* 1 Pa.C.S. § 1922(1) and (5). It would most certainly be absurd, unreasonable, and against public interest to create a race to file a custody petition and divest one grandparent of his or

her right to custody because another grandparent filed a petition first. Rather, the trial court should have the opportunity to determine which grandparent can best serve the child's needs. The trial court must consider in its analysis many custodial factors, including the impact of moving the child from one grandparent to another one. The trial court, however, should have the opportunity to consider all custodial options for the child and this interpretation of the statute gives the trial court the discretion to place the child with the grandparent best suited to care for the child and does not limit the trial court's decision to the grandparent who filed first.

Therefore, we conclude that regardless of a child's custody status, the Custody Act grants standing to grandparents to file for any form of physical or legal custody when their grandchild is substantially at risk due to "parental abuse, neglect, drug or alcohol abuse or incapacity" pursuant to 23 Pa.C.S. § 5324(3)(iii)(B). Thus, the trial court erred as a matter of law in sustaining Maternal Great-Grandparents' Preliminary Objections, concluding that Paternal Grandparents did not have standing to pursue custody of Child, and dismissing Paternal Grandparents' Petition to Intervene. Accordingly, we reverse the trial court's October 10, 2017 Order and remand this case for the trial court to promptly hold a hearing on Paternal Grandparents' Petition to Intervene.

*G.A.P., supra* at 617-19 (some internal citations omitted).

Further, "custody cases may be fluid under some circumstances." *M.W. v. S.T.*, 196 A.3d 1065, 1071 (Pa.Super. 2018), *appeal denied*, ___ Pa. ___, 199 A.3d 336 (2018) (internal citation omitted). Consequently, this Court has "re-evaluated a party's standing following a factual change in circumstances…." *Id.* (holding children's change in status from dependent to not dependent, and reunification with parents, are relevant changes in

circumstances that permit re-evaluation of standing;[6] while grandmother ostensibly had standing at time she filed her petition seeking custody, factual circumstances subsequently changed; trial court did not err in considering change of circumstances when determining standing).

Instantly, the parties agree Maternal Grandmother satisfies the second subsection under Section 5324(3)(ii) (regarding willingness to assume responsibility of Child); and the third subsection under Section 5324(3)(iii)(B) (Child is substantially at risk due to parents' abuse, neglect, drug/alcohol abuse, or incapacity), per *G.A.P., supra*. (*See* Paternal Grandmother's Brief at 10). The parties dispute only whether Maternal Grandmother had a relationship with Child that began with the consent of a parent, under Section 5324(3)(i). Paternal Grandmother insists Maternal Grandmother had no relationship with Child at all at the time Maternal Grandmother filed her petition to intervene. Specifically, Paternal Grandmother emphasizes Maternal Grandmother's concession at the hearing, that at the time she filed her petition to intervene, she had never even met Child. (*See* Paternal Grandmother's Brief at 13-14).

Notwithstanding Maternal Grandmother's concessions at the hearing, the record in this case demonstrates a relevant change in the facts.

_____

[6] In *M.W.*, the parties agreed grandmother had standing under Section 5324(3)(i) and (ii). The parties disputed only whether grandmother had standing under Section 5324(3)(iii)(A).

Significantly, by the time of the hearing on the petition to intervene, Mother had expressly consented to Maternal Grandmother's relationship with Child, and Maternal Grandmother had visited with Child at Paternal Grandmother's home. Thus, at the time the court ruled on the petition, the court should have considered the factual change in circumstances. *See M.W., supra*. Based upon the foregoing, and particularly in light of the public policy concerns outlined in *G.A.P., supra* disapproving of a "race to file" by grandparents, we conclude the trial court erred by dismissing Maternal Grandmother's petition to intervene for lack of standing.[7] Accordingly, we reverse and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction is relinquished.

---

[7] We also observe that Section 5324(4) might have afforded Maternal Grandmother an alternative avenue for standing. *See* 23 Pa.C.S.A. § 5324(4) (granting standing, subject to paragraph (5), to individual who establishes by clear and convincing evidence: (i) individual has assumed or is willing to assume responsibility for child; (ii) individual has sustained, substantial, and sincere interest in welfare of child; and (iii) neither parent has any form of care and control of child). Section 5324(5) states paragraph (4) shall not apply if a dependency proceeding involving the child is ongoing; or if there is an order of permanent legal custody under 42 Pa.C.S.A. § 6351(a)(2.1) or (f.1)(3) (relating to disposition of dependent child). *See* 23 Pa.C.S.A. § 5324(5). While CYS has been involved in this case, nothing in the record indicates a dependency proceeding is ongoing, which would have prevented Maternal Grandmother from asserting standing under Section 5324(4). As we have already decided that Maternal Grandmother has standing under Section 5324(3), however, we need not remand for a determination of standing under Section 5324(4).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/12/2020