2018 PA Super 268

| | | |
|---|---|---|
| M.W., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| S.T. and V.T., | : | |
| | : | |
| Appellees | : | No. 712 WDA 2018 |

Appeal from the Order Entered April 16, 2018
In the Court of Common Pleas of Somerset County
Civil Division at No(s): No. 146 Civil 2017

BEFORE:   OLSON, MCLAUGHLIN, and STRASSBURGER, JJ.*

OPINION BY STRASSBURGER, J.:                 FILED SEPTEMBER 26, 2018

M.W. (Grandmother) appeals from the order entered April 16, 2018, which dismissed her complaint for custody of her minor grandchildren, O.T. and S.T. (collectively, Children).  We affirm.

We provide the following background.  The biological parents of Children are Appellees, S.T. and V.T. (collectively, Parents).  Grandmother is the biological mother of V.T., Children's father.  According to Grandmother, Somerset County Children and Youth Services (CYS) placed Children in her care in May 2015, and they remained with her until November 2015. Complaint, 3/6/2017, at ¶ 7.  During that placement, Children were adjudicated dependent.[1]  In November 2015, CYS removed Children from

_____

[1] The dependency arose from the situation with Parents.

* Retired Senior Judge assigned to the Superior Court.

Grandmother's care and placed them in the care of their biological aunt.[2] Subsequently, in July 2016, Children were moved again and placed with another set of biological grandparents. According to Grandmother, it was at this point that she stopped having visits with Children.

On September 29, 2016, Grandmother filed a petition with the juvenile court to intervene in the dependency proceedings.[3] N.T., 4/13/2018, at 12. Prior to disposition of Grandmother's petition, Children were returned to the care of their Parents in January 2017, but remained dependent. On February 2, 2017, argument was held on Grandmother's petition to intervene, and that petition was denied on February 8, 2017. Id. at 13. The order provided that Grandmother could re-file the petition in the civil division. On March 6, 2017, Grandmother filed a complaint for custody against Parents in the civil division.[4]

Efforts to hold a required custody conference between Grandmother and Parents were unsuccessful. The certified record reveals that a conciliation or mediation conference was scheduled for May 12, 2017. However, prior to that conference, all parties were required to attend a Families of Children Under Stress (FOCUS) seminar. As of May 12, 2017, neither Grandmother nor

_____

[2] According to Grandmother, she still saw Children three-to-four days each week. N.T., 4/13/2018, at 11.

[3] There were two separate dependency proceedings, one for each child.

[4] That complaint for custody also listed CYS as a defendant.

Parents had attended the FOCUS seminar, and the trial court rescheduled the conference to August 4, 2017.

Meanwhile, on June 21, 2017, "CYS determined that [Children] were no longer dependent, reunited [Children] with [Parents], and closed the CYS investigation and dependency proceedings." Trial Court Opinion, 5/25/2018, at 4. On August 4, 2017, Grandmother requested a continuance of the custody conference due to her health issues. The trial court granted the continuance and required Grandmother to file a praecipe to reschedule the conference. Grandmother filed a praecipe on September 29, 2017, and the conference was scheduled for December 8, 2017. Neither Grandmother nor Parents appeared for that conference, and the trial court entered an order permitting the case to be scheduled for non-jury trial upon praecipe of either party.

On December 12, 2017, Grandmother filed a praecipe. Counsel for Parents entered his appearance on February 27, 2018, and on March 7, 2018, Parents filed a petition to dismiss Grandmother's complaint. In that petition, Parents asserted that Grandmother does not have standing to seek custody of Children pursuant to 23 Pa.C.S. § 5324, because the juvenile court closed the dependency case on June 21, 2017, and Children and Parents were living together as an intact family.

Argument on the motion was scheduled for April 13, 2018. Both the day before argument and just prior to the argument itself, there were

attempts to resolve the matter amicably.  However, negotiations proved to be unsuccessful and argument on the petition to dismiss was held. See N.T., 4/13/2018, at 2-3.  Parents contended that Grandmother's standing ended on June 21, 2017, when the juvenile court closed the dependency case. Grandmother argued that the trial court should determine the standing issue from the time she filed her complaint. Id. at 14.  Alternatively, Grandmother contended that the statute permits a grandparent "to come back later on to sue for custody … [because there is] the potential for [] issues [related to the prior dependency] to reoccur." Id. at 15.

At the close of argument, the trial court concluded that pursuant to the statute, Grandmother no longer had standing to seek custody of Children because they were no longer dependent and were residing with Parents. Accordingly, the trial court granted Parents' petition to dismiss Grandmother's complaint for custody.[5] Order, 4/16/2018.

Grandmother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion in response.

_____

[5] In addition, the trial court dismissed CYS as a party in the action.

- 4 -

On appeal, Grandmother argues the trial court erred in dismissing her complaint for lack of standing pursuant to 23 Pa.C.S. § 5324.[6]  See Grandmother's Brief at 3.  We review this claim mindful of the following.

"Threshold issues of standing are questions of law; thus, our standard of review is de novo and our scope of review is plenary."  K.W. v. S.L., 157 A.3d 498, 504 (Pa. Super. 2017).

> The concept of standing, an element of justiciability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of.  The purpose of this rule is to ensure that

_____

[6] Grandmother also complains that the juvenile court erred in dismissing her petition to intervene filed in the dependency proceedings. Grandmother's Brief at 13-15.  However, Grandmother did not file an appeal at those docket numbers or even identify those orders as orders from which she wished to appeal in the notice of appeal in this case.  While the rules permit a party to file "only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order," the rule also provides that "[w]here … one or more orders resolves [sic] issues arising on more than one docket…, separate notices of appeal must be filed."  See Pa.R.A.P. 341 (Note).  Accordingly, we will not review the juvenile court orders.

Additionally, according to Grandmother, she did not appeal those orders "as said appeal would have almost certainly been treated by this Court as interlocutory and quashed due to the unique procedural posture." Grandmother's Brief at 14.  That is not necessarily true.  See K.C. v. L.A., 128 A.3d 774 (Pa. 2015) (holding that an appeal from an order denying intervention in a custody action is a collateral order); In re J.S., 980 A.2d 117 (Pa. Super. 2009) (holding that an order granting foster parents' permission to intervene in dependency case is an appealable collateral order); In the Interest of B.S., 923 A.2d 517 (Pa. Super. 2007) (assuming jurisdiction over appeal from order denying grandmother's petition to intervene in dependency proceeding).  However, this Court has held consistently that individuals in Grandmother's situation do not have standing to intervene in dependency proceedings. See e.g., In the Interest of L.C., II, 900 A.2d 378 (Pa. Super. 2006).

cases are presented to the court by one having a genuine, and not merely a theoretical, interest in the matter. Thus the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand.

Moreover:

In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

D.G. v. D.B., 91 A.3d 706, 708 (Pa. Super. 2014) (internal quotations omitted). "Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." K.W., 157 A.3d at 504.

The most recent version of the Grandparent Custody and Visitation Act was enacted in 2010 and provides two separate provisions for grandparents seeking custody of their grandchildren.[7] Any grandparent may seek any form of custody pursuant to 23 Pa.C.S. § 5324(3). In addition, for grandparents in certain situations, they may seek partial custody pursuant to section 5325.[8]

_____

[7] These sections also apply to great-grandparents seeking custody of their great-grandchildren.

[8] This section of the statute has been through several iterations due to our Supreme Court having declared a portion of it unconstitutional in D.P. v.

Here, there is no dispute that only subsection 5324(3) applies, and that

section provides the following in relevant part.

> § 5324. Standing for any form of physical custody or legal custody
>
> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> (1) A parent of the child.
>
> (2)  A person who stands in loco parentis to the child.
>
> (3) A grandparent of the child who is not in loco parentis to the child:
>
>> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>>
>> (ii) who assumes or is willing to assume responsibility for the child;  and
>>
>> (iii) when one of the following conditions is met:

_____

G.J.P., 146 A.3d 204 (Pa. 2016) and an amendment to the 2010 version of the statute, which was effective on July 3, 2018.  In 2010, this statute permitted grandparents to seek custody where a parent of their grandchild is deceased, where the parents of their grandchildren have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve the marriage, or where their grandchild has been living with them for at least 12 consecutive months.  Then, in D.P., our Supreme Court held unconstitutional only the portion of the statute permitting grandparents to file a custody action where the parents of their grandchild are separated.  Finally, effective July 3, 2018, the entire statute has been amended and provides for three situations where grandparents may file an action for custody: 1) where a parent of their grandchild is deceased; 2) where their relationship with their grandchild began with the consent of a parent or court order and the parents of their grandchild have commenced a custody proceeding and do not agree as to whether grandparents should have custody; or 3) where their grandchild has resided with them for at least 12 consecutive months.  Because certain cases cited infra reference both statutes, we provide this background for clarity.

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324.

In this case, Grandmother contends that the Children were "dependent from July 15, 2015 until June 21, 2017," and she filed her complaint for custody on March 6, 2017, while they were dependent. Grandmother's Brief at 17. Thus, she argues she satisfies subsection 5324(3)(iii)(A) because "[children have] been determined to be [] dependent [children]."[9] Id.

At the time Grandmother filed her petition, she clearly had standing to file a custody complaint pursuant to this statute because Children were dependent. However, during the course of the proceedings, the juvenile court determined Children were no longer dependent; thus, the trial court concluded

_____

[9] There does not appear to be a dispute at this juncture that Grandmother satisfies the other prongs of this statute, i.e., that her relationship with Children began with the consent of Parents or court order, and that she is willing to assume responsibility for Children. See 23 Pa.C.S. § 5324(3)(i) and (ii).

that Grandmother lost her standing. See Trial Court Opinion, 5/25/2018, at 5. Grandmother disagrees with this interpretation, instead arguing that a "clear and plain reading of the statute provides no indication for termination of standing upon closing of the dependency proceedings." Grandmother's Brief at 20. Thus, Grandmother first argues that the trial court erred in concluding she no longer had standing because it evaluated her claim at the wrong time. According to Grandmother, the trial court should have looked back to the time she filed her complaint to evaluate standing. See Grandmother's Brief at 18-19.

While there are no custody cases directly on point, we have pointed out that "custody cases may be fluid under some circumstances." M.G. v. L.D., 155 A.3d 1083, 1087 n.5 (Pa. Super. 2017). Furthermore, this Court has "re-evaluated a party's standing following a factual change in circumstances, i.e., the termination of parental rights or adoption." Id. Finally, our rules permit parties to raise issues related to standing beyond the 20-day period provided for preliminary objections. See Pa.R.C.P. 1915.5(a) ("A party must raise any question of jurisdiction of the person or venue, and may raise any question of standing, by preliminary objection filed within twenty days of service of the pleading to which objection is made or at the time of the hearing, whichever first occurs.") (emphasis added).

Based on the foregoing, we conclude that Children's change in status from dependent to not dependent, and reunification with Parents, are relevant

changes in circumstances that permit the re-evaluation of standing upon motion by a party. In fact, it would not make sense to permit a party to raise standing at any time, but then consider the factual circumstances as they existed at the time the complaint was filed for such fluid child custody cases. Accordingly, we hold the trial court did not err in considering the circumstances as they were at the time the petition to dismiss was filed when determining standing.[10]

Grandmother next argues that even if we were to consider the circumstances at the time the petition to dismiss was filed, the statute nevertheless permits a trial court to grant Grandmother standing due to the potential for an unspecified future harm or future dependency adjudication. See Grandmother's Brief at 20. To the extent that this portion of the statute is ambiguous on this point,[11] we consider it mindful of the following.

> The nationwide enactment of nonparental visitation statutes is assuredly due, in some part, to the States' recognition of these

_____

[10] As a corollary, Grandmother argues that much of the delay in having her custody complaint heard was attributable to Parents. See Grandmother's Brief at 21. Even if such delay would permit this Court to evaluate standing at a different time, this argument would not entitle Grandmother to relief as it is belied by the record. As recounted supra, Grandmother initially tried to intervene in the dependency proceedings, which, by law, she was not able to do. Then, she filed her complaint for custody in the appropriate division, but did not attend the FOCUS seminar as required. Thus, Grandmother herself contributed significantly to any delay.

[11] Arguably, the term "has been determined to be a dependent child," could be ambiguous under these circumstances. 23 Pa.C.S. § 5324(3)(iii)(A). In that case, the object of interpretation "is to ascertain and effectuate the intention of the General Assembly." In re C.L.P., 126 A.3d 985, 989 (Pa. Super. 2015).

changing realities of the American family. Because grandparents and other relatives undertake duties of a parental nature in many households, States have sought to ensure the welfare of the children therein by protecting the relationships those children form with such third parties. The States' nonparental visitation statutes are further supported by a recognition, which varies from State to State, that children should have the opportunity to benefit from relationships with statutorily specified persons—for example, their grandparents. The extension of statutory rights in this area to persons other than a child's parents, however, comes with an obvious cost. For example, the State's recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship.

Troxel v. Granville, 530 U.S. 57, 64 (2000) (plurality). The United States Supreme Court observed that the "liberty interest … of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Id. at 65. Further, the Court has "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66. Thus, "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. at 68-69.

The Pennsylvania Supreme Court has recognized these principles as well.

[A]bsent factors such as abuse, neglect, or abandonment, the law presumes parents are fit and, as such, that their parenting decisions are made in their children's best interests. In the context of grandparent-initiated litigation, then, the rewritten Chapter 53 can only [apply] if the prerequisites to grandparent standing effectively filter out cases where there is little reason to

- 11 -

believe the government may constitutionally exercise its parens patriae power by ordering partial custody over the parents' objections.

D.P., 146 A.3d at 214 (internal citations omitted).

Our Supreme Court held that efforts to usurp a presumptively fit parent's rights to the upbringing of his or her children is subject to constitutional limitations. The Court concluded "the fact of a parental separation for six months or more does not render the state's parens patriae interest sufficiently pressing to justify potentially disturbing the decision of presumptively fit parents concerning the individuals with whom their minor children should associate." Id. at 215.

Based on the foregoing, it is clear that Grandmother's argument, which relies upon bootstrapping a closed dependency adjudication in an effort to obtain visitation, fails.[12] If Grandmother had concerns for Children's safety, she could have raised a subsection 5324(3)(iii)(B) (permitting grandparent standing where "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity") argument before the trial court. She did not, and in fact, she essentially agreed that Children were being cared

_____

[12] D.P. analyzed section 5325, which involves partial custody only. We recognize that this case involves section 5324, which permits any form of custody. However, we must point out that in this case, Grandmother is seeking only partial custody. Grandmother was asking the trial court for "a weekend or two visit every six weeks." N.T., 4/13/2018, at 18. Grandmother was upset because she used to see Children frequently, but due to arguments with Parents, she was no longer able to see Children. Id.

for adequately, and her goal with these proceedings was to have the court order periods of partial custody because Parents were not permitting her to see Children. N.T., 4/13/2018, at 18. That is not the purpose of section 5324; thus, we disagree with Grandmother that she should be permitted to bootstrap a prior dependency adjudication for this purpose.

Based on the foregoing, we conclude the trial court did not err in granting Parents' petition to dismiss Grandmother's complaint for custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/26/2018