J-A07006-21

2021 PA Super 144

E.A., III                       :        IN THE SUPERIOR COURT OF
                                      :              PENNSYLVANIA
                                      :
           v.                    :
                                      :
                                      :
E.C.                          :
                                      :
                  Appellant      :        No. 1439 MDA 2020
                                      :
C.Q., INTERVERNOR         :

Appeal from the Order Entered September 25, 2020
In the Court of Common Pleas of York County Civil Division at No(s):
2017-FC-2186-03

BEFORE:    BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                            **FILED JULY 13, 2021**

E.C. ("Mother") appeals from the September 25, 2020 order that granted the petition filed by C.Q. ("Maternal Grandmother") seeking to intervene in child custody litigation involving J.A., who was born to Mother and E.A., III ("Father") in November 2012. We reverse.

The trial court succinctly summarized the relevant procedural history of the custody litigation:

> On November 13, 2017, Father, now deceased, filed a complaint for custody seeking partial custody rights of his daughter. On February 5, 2018, a stipulated order for custody was entered by the court which granted the parents shared legal custody and Mother primary physical custody with Father having partial physical custody rights. On April 26, 2019, Mother filed a petition to modify. On June 12, 2019, Father filed a motion for contempt and cross[-]motion for modification. An interim order

---

[*] Former Justice specially assigned to the Superior Court.

was entered on July 12, 2019, in which the Court granted make-up dates to Father due to Mother's acknowledgment of withholding custody. [The court ordered a custody trial which, following several continuances, was scheduled for July 28, 2020.] On April 27, 2020, Mother filed a motion to withdraw custody complaint and cancel custody trial due to the death of Father in March 2020. The court granted this motion on April 29, 2020.

Trial Court Opinion, 11/20/20, at 1-2 (unnecessary capitalization omitted).

More than three months after Father's death, and more than two months after the court granted Mother's petition to withdraw Father's custody complaint and cancel the custody trial, Maternal Grandmother filed a petition to intervene in the custody litigation.[1] Mother filed a preliminary objection challenging Maternal Grandmother's standing to intervene and Maternal Grandmother filed her response asserting standing based upon § 5325(2) of the Child Custody Law, which we reproduce *infra*. That provision permits, *inter alia*, grandparents to file for partial physical custody where 1) the relationship with the child began with the consent of a parent; 2) the parents of the child commenced custody litigation; and 3) the parents disagree as to whether the grandparent should exercise partial physical custody. **See** 23 Pa.C.S. § 5325(2).

---

[1] Maternal Grandmother initially filed a custody complaint in Cumberland County but withdrew it following Mother's preliminary objection asserting jurisdiction in York County, where Father initiated the instant custody litigation. In conjunction with the instant petition to intervene, Maternal Grandmother also sought to transfer venue from York County to Cumberland County, where Maternal Grandmother asserts the parties all reside. The trial court held that motion in abeyance pending resolution of Maternal Grandmother's standing.

- 2 -

At the ensuing oral argument, the trial court took judicial notice of the prior custody litigation between Mother and Father and that the parties stipulated Father previously endorsed Maternal Grandmother's relationship with J.A. prior to his death. N.T., 9/9/20, at 7-9. The crux of Maternal Grandmother's argument was that, since she ostensibly would have had standing had she sought to intervene pursuant to § 5325(2) before Father died, she should be able to exercise standing in accordance with that proviso after his death. Stated plainly, she contended that Father's endorsement and the parties' prior disagreement over her involvement in J.A.'s life survived Father's passing.

Mother countered that the unambiguous language of the statute, which is to be narrowly construed, was drafted in the present tense, *i.e.*, "parents . . . do not agree as to whether the grandparent . . . should have custody[,]" and there is no statutory authorization of standing based on past or future considerations. *See* 23 Pa.C.S. § 5325(2)(ii). She continued that, since Father had died more than three months before Maternal Grandmother sought to intervene, the requisite disagreement between the parents simply did not exist.

The trial court rejected Mother's argument, accepted Maternal Grandmother's position, and granted the petition to intervene.[2] Specifically, the trial court reasoned,

> Looking at the statute of 5325(2), the court is going to adopt Maternal Grandmother's [position] that she had or would have had standing while Father was alive because [the requirements] under subsection 2[(i) and (ii)] were both fulfilled. The court believes that it is illogical to say that grandmother had standing while Father was alive but now would not have standing since Father has been deceased.

Trial Court Order, 9/10/20, at 3 (cleaned up). Mother filed a timely motion to certify the interlocutory order for appeal, which the trial court granted on September 25, 2020, and entered an amended order certifying the matter for an immediate interlocutory appeal.

This timely appeal followed, wherein Mother complied with Pa.R.A.P. 1925(b) by filing a concise statement of errors complained of on appeal.[3] The trial court's ensuing opinion pursuant to Pa.R.C.P. 1925(a) explicitly adopted the rationale that the court outlined in its prior order and amended order entered during September 2020. Mother presents two issues for our review:

> 1. Did the court err when it did not give plain meaning to the clear and unambiguous language of 23 Pa.C.S. § 5325(2)(ii) ("do not

---

[2] The trial court initially granted relief based entirely upon its preliminary review of the case and Maternal Grandmother's argument. **See** N.T. 9/9/20, at 10-11. However, after Mother correctly highlighted that she had not been granted an opportunity to present her counterargument, the court delayed its decision until after hearing Mother's legal positon. **Id**.

[3] Mother filed in this Court a petition for permission to appeal interlocutory order, which we granted on November 17, 2020.

agree") and characterized the wishes of a deceased parent as a relevant "disagreement" with the remaining presumed fit living parent when the statute is written in the present tense with no provision concerning past or future agreements?

2. Did the court err by giving consideration to any standing Maternal Grandmother might have achieved in the event that she had filed an Intervenor action prior to the death of Father, and, once determining that she "had or would have had standing" had such filing been made, granting standing to her "by logic" in the instant Intervenor action?

Mother's brief at 4.

As both of Mother's arguments implicate Maternal Grandmother's standing to participate in the custody dispute following Father's death, we address the contentions jointly. Typically, we review a trial court's custody order for an abuse of discretion, accepting the court's credibility determinations and factual findings that the record supports. *V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012) ("Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record."). However, "[g]randparent standing to seek an order directing custody or visitation is a creature of statute, as grandparents generally lacked substantive rights at common law in relation to their grandchildren." *D.P. v. G.J.P.*, 146 A.3d 204, 213 n.13 (Pa. 2016). Thus, where, as here, the appeal involves a pure question of law, such as statutory interpretation, we employ a *de novo* standard of review and plenary scope of review. *G.A.P. v. J.M.W.*, 194 A.3d 614, 616 (Pa.Super. 2018).

As we previously explained,

When interpreting a statute, this [C]ourt is constrained by the rules of the Statutory Construction Act of 1972 (the "Act"). The Act makes clear that the goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly while construing the statute in a manner that gives effect to all its provisions. *See* 1 Pa.C.S. § 1921(a). The Act provides: "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Moreover, it is well settled that "the best indication of the General Assembly's intent may be found in a statute's plain language." *Cagey v. Commonwealth*, 179 A.3d 458, 462 (Pa. 2018). Additionally, we must presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable and does intend to favor the public interest over any private interest.

*Id*. (select citations and emphasis omitted).

Instantly, we need not engage in a lengthy statutory analysis because the words of the statute are clear and free from all ambiguity. As noted, *supra*, this appeal turns on the application of § 5325(2), which provides grandparents and great-grandparents standing to pursue partial physical custody and supervised physical custody in the following specific situation:

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

. . . .

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section[.]

- 6 -

23 Pa.C.S. § 5325(2).[4]

In child custody cases, the concept of standing is fluid and differs from the typical determination regarding whether a party has a direct interest in the outcome of litigation. *See M.W. v. S.T.*, 196 A.3d 1065, 1071 (Pa.Super. 2018) (recognizing that standing in child custody cases may be subject to change and can be re-evaluated after factual changes in circumstances). This Court further explained,

> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

*D.G. v. D.B.*, 91 A.3d 706, 708 (Pa.Super. 2014) (quoting *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1318 (Pa.Super. 1996)).

Instantly, the trial court took judicial notice of the earlier custody litigation and the joint stipulation that Mother and Father previously disagreed about Maternal Grandmother's relationship with J.A. prior to Father's death. Hence, the only question before the trial court was whether that disagreement survived Father's death and currently constitutes a basis to revive the custody

---

[4] Grandmother did not assert standing under any of the remaining subparagraphs, including the provision that extends standing to "a parent or grandparent of the deceased parent[.]" 23 Pa.C.S. § 5325(1). *See* N.T. 9/9/20, at 9 (Maternal Grandmother assenting to the court's statement, "So, presumably under [§] 5325(1), grandmother doesn't have standing . . . because she is not the parent of the deceased parent."

litigation. As previously noted, the trial court adopted Maternal Grandmother's contention that her prior, perceived standing to intervene in the then-active custody litigation endured after Father's death, and presumably the withdrawal of the pertinent custody complaint.

On appeal, Maternal Grandmother contends that the statute is ambiguous because it does not "state that both parents must be living in order for a grandparent to establish standing under Section 5325(2)." Maternal Grandmother's brief at 4. Conveniently disregarding ensconced principles regarding the fluidity of standing in matters involving child custody, she attempts to draw opacity from the statute's alleged lack of clarity regarding 1) when the predicate disagreement between parents must exist; and 2) how long the disagreement must endure. *Id* at 4-5. Treating the nature of standing in these circumstances as static, she opines that, in light of these "many issues surrounding the timing of this 'disagreement' that are not specifically addressed by the plain words of the statute . . . , this Court should look to the Statutory Construction Act for guidance." *Id*. at 5.

Maternal Grandmother's arguments fail. As noted in the foregoing discussion and further elucidated *infra*, our case law establishes that standing in child custody is indefinite and determined based upon the facts **when the issue is decided**. *See M.W.*, *supra* at 1071. Hence, any ambiguity that Maternal Grandmother could draw from her hypothetical questions concerning the timing of the disagreement between parents is ephemeral, and insofar as

the statute is clear and unambiguous in this regard, we may not interject new meanings to the plain words under the guise of construction. **See** 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Thus, notwithstanding Maternal Grandmother's protestations to the contrary, this appeal does not warrant a comprehensive application of statutory construction. **See Cagey**, **supra** at 462 ("the best indication of the General Assembly's intent may be found in a statute's plain language.").

Turning to Mother's argument, Mother stresses that parents have a fundamental liberty interest in raising children as they see fit and that the state will not interfere with child-rearing decisions of otherwise fit parents absent a showing of harm. **See** Mother's brief at 13-14 (citing **D.P. supra** and **Hiller v. Fausey**, 904 A.2d 875 (Pa. 2006)). In addition, invoking the principle of statutory construction outlined in 1 Pa.C.S. § 1921(b), Mother accurately observes that, "Where the language of a statute is clear and unambiguous, a court may not, under the guise of construction, add matters the legislature saw fit not to include at the time." **Id**. at 12 (quoting **M.S. v. J.D.**, 215 A.3d 595, 602 (Pa.Super. 2019)). Hence, she argues that the trial court's sweeping interpretation of § 5325(2), in order to circumvent the effect of Father's death and grant standing to Maternal Grandmother based upon past disagreements, impeded her right to raise J.A. without interference. Mother's brief at 13. She reasons that the plain language interpretation of the

statute's reference to parents who "do not agree" relates to the present tense with no reference to past or future agreements. *Id*. Thus, Mother opines that, because "there is no longer the possibility for either agreement or disagreement" between Mother and late Father, the trial court erred in interpreting § 5325(2) in a manner that grants Maternal Grandmother "retroactive standing" based on the past parental disagreements regarding her involvement with J.A. *Id*.

Phrased differently, Mother contends, "had the General Assembly intended consideration of any past agreements between living parents or inquiry into the wishes of a deceased parent, [it] would have been free to include such in the statute rather than couch it strictly in terms of present tense." *Id*. at 15. Bolstered by the fact that the General Assembly did not include these considerations in the statute or suggest that a retrospective analysis would be appropriate in any circumstances, she opines that the plain language of § 5325(2)(ii) relates to a current disagreement between the parents as of the time that standing is to be determined. For the following reasons, we agree.

The crux of the trial court's decision, both as announced from the bench and as outlined in the operative order, was that it would be "illogical to say that grandmother had standing while Father was alive but now would not have standing since Father has been deceased." Trial Court Order, 9/10/20, at 3. This logic-based rationale, however, not only presumes that Maternal

- 10 -

Grandmother sought to intervene when Father was alive, which she did not, it ignores three settled principles regarding standing to participate in child custody litigation: (1) standing in child custody may be inconstant; (2) fit parents have a fundamental right to parent without governmental interference;[5] and (3) where there is no dispute between parents whether to permit interactions with third parties, court-mandated associations with third parties intrudes upon the parents' constitutional prerogatives. *See M.W.*, *supra* at 1071 ("[standing in] custody cases may be fluid under some circumstances"); *D.P. v. G.J.P.*, 146 A.3d 204, 214 (Pa. 2016) ("absent factors such as abuse, neglect, or abandonment, the law presumes parents are fit and, as such, that their parenting decisions are made in their children"s best interests."); *Id*. at 593–94 (citing *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn.1993) ("[T]he trial court's interference with the united decision of admittedly good parents represents a virtually unprecedented intrusion into a protected sphere of family life."). Hence, absent an applicable statutory exception, a third party such as Maternal Grandmother cannot seek custody of J.A. in derogation of Mother's wishes.

The Child Custody Law enumerates the exceptions to the general rule restricting third-party interference and Maternal Grandmother invoked the exception outlined in § 5325(2). Since the parties stipulated that Maternal

---

[5] Grandmother abandoned her initial assertion that Mother was unfit and detrimental to J.A.'s wellbeing.

- 11 -

Grandmother's relationship with J.A. began with Father's consent and that the parents were embroiled in custody litigation when Father died, the court reasoned that any ostensible standing that Maternal Grandmother could have exercised prior to Father's death continues and permits her to intervene after his passing. The flaw in the trial court's rationale is that standing in child custody cases is dynamic.

In **M.W.**, **supra**, this Court addressed the sometimes labile nature of standing in child custody cases pursuant to a related section of the Child Custody Law and held that the trial court did not err in considering a change of circumstances when determining third-party standing. In that case, a grandmother sought standing to seek physical or legal custody of her grandchildren pursuant to 23 Pa.C.S. § 5324(3)(A), which applies, *inter alia*, when "the child has been determined to be dependent[.]" The record revealed that her grandchildren were dependent when she filed her complaint for custody but the dependency case was closed three months later and the children were reunited with their parents. Thereafter, the trial court granted the parents' petition to dismiss the grandmother's complaint for custody, reasoning that, although the grandmother had standing in accordance with § 5324(3)(A) when she filed the custody complaint, she lost her standing when the juvenile court determined that the subject children were no longer dependent.

In affirming the order dismissing the grandmother's complaint for lack of standing, this Court acknowledged that "custody cases may be fluid under some circumstances," noted situations where we have "re-evaluated a party's standing following a factual change in circumstances," and observed that standing can be challenged beyond the 20-day period provided for preliminary objections. *Id*. at 1071 (citations omitted). We ultimately concluded,

> [the c]hildren's change in status from dependent to not dependent, and reunification with [p]arents, are relevant changes in circumstances that permit the re-evaluation of standing upon motion by a party. **In fact, it would not make sense to permit a party to raise standing at any time, but then consider the factual circumstances as they existed at the time the complaint was filed for such fluid child custody cases**.

*Id*. (emphasis added).

Although *M.W.* involved a different basis for standing than Maternal Grandmother invoked in the case at bar, the identical principle applies herein, *i.e.*, regardless of Maternal Grandmother's putative standing to intervene prior to Father's death, we examine whether standing is present in light of the factual circumstances as they currently exist. This principle is consistent with the present tense language of § 5325(2)(ii) requiring a grandparent or great-grandparent to demonstrate that parents "do not agree as to whether the grandparents . . . should have custody under this section[.]" Accordingly, the trial court erred in ignoring this fundamental principle of child custody law in deeming Maternal Grandmother's standing inevitable based upon her favor with Father before he died. Thus, while Maternal Grandmother may have had

- 13 -

standing based upon the parents' disagreement prior to Father's death, the factual circumstances subsequently changed. The trial court erred in failing to consider that change of circumstances when determining whether Maternal Grandmother had standing to pursue custody pursuant to § 5325(2) at this junction.

In sum, § 5325(2)(ii) confers standing upon grandparents and great-grandparents "where the parents of the child (i) have commenced a proceeding for custody; and (ii) do not agree as to whether the grandparents or great grandparents should have custody under this section[.]" The words of this provision are clear and unambiguous, and they do not make an exception to consider past disagreements. Consistent with our precedent discussing the fluid nature of standing in child custody cases, the plain language of the statute confers standing to grandparents and great-grandparents to intercede in custody litigation when the parents "do not agree" as to the nature of the third-party's interaction with their child. Hence, regardless of any prior disagreements between parents about a grandparent's ability to exercise partial custody, the Child Custody Law does not extend standing to grandparents to file for partial physical custody under this section when the predicate disagreement no longer exists. Thus, the trial court erred as a matter of law in awarding standing to Maternal Grandmother based upon § 5325(2) when Father is no longer able to either assent or oppose Mother's decisions regarding Maternal Grandmother's custody.

Accordingly, for all of the foregoing reasons, we reverse the order granting Maternal Grandmother's petition to intervene and direct the trial court to dismiss the petition due to Maternal Grandmother's lack of standing to pursue partial physical custody in accordance with the § 5325(2)(i) and (ii).

Order reversed. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/13/2021