J-S16034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY HUGENDUBLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMANDA SICS | : | |
| | : | |
| | : | No. 175 MDA 2022 |
| APPEAL OF: KARL SICS | : | |

Appeal from the Order Entered January 19, 2022
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2020-20549

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  AUGUST 29, 2022**

Karl Sics ("Grandfather"), the maternal grandfather of D.J.H. ("Child"), appeals from the order denying his petition to intervene in the custody action initiated by Child's father, Timothy Hugendubler ("Father"), against Child's mother, Amanda Sics ("Mother," collectively "Parents").[1]  We affirm.

On June 21, 2021, Father filed a custody complaint against Mother, seeking shared legal and physical custody of Child.  At the time the complaint

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] At the trial court hearing, as well as in this appeal, Grandfather's counsel purports to represent the interest of both maternal grandparents in this matter.  However, the petition to intervene was filed solely on behalf of Grandfather, and we therefore only consider the appellate issues as they relate to Grandfather's interest as a proposed intervenor.  **_See Liles v. Balmer_**, 653 A.2d 1237, 1239 n.1 (Pa. Super. 1994) (individual who was not party to action and who did not seek permission to intervene in trial court is not aggrieved by the trial court order and has no standing to appeal).

was filed, Child was three-years old and resided with Mother in Lebanon, Pennsylvania. A conciliation conference was held on September 30, 2021, at which point the parties were unable to agree and an interim order was entered providing that Parents had shared legal custody, Mother had primary physical custody, and Father had partial physical custody.

On October 29, 2021, Grandfather filed the instant petition to intervene. According to the petition, Mother was then residing with her parents in Gilberton, Pennsylvania. Petition to Intervene, 10/29/21, ¶¶2-3. In the petition, Grandfather asserted standing to pursue custody of Child under Section 5324(3) and Section 5325(2) of what is commonly referred to as the Child Custody Act, 23 Pa.C.S. §§ 5324(3), 5325(2). Petition to Intervene, 10/29/21, ¶8. The petition lacked any substantive factual allegations concerning Grandfather's basis for standing. Father filed an answer to the petition, in which he opposed Grandfather's intervention.

The trial court held a hearing on Grandfather's petition on January 14, 2022. At the hearing, counsel for Grandfather asserted that Mother and Child moved in with her parents in April 2021 and Mother was residing in a different residence on their property. N.T., 1/14/22, at 4, 9. Grandfather's counsel asserted that Mother had been committed in 2021, was "still dealing with a lot of mental health issues," and therefore maternal grandparents were the "primary caregivers . . . doing the day-to-day care of" Child. *Id.* at 7, 9-10. While counsel for Grandfather requested the opportunity to elicit testimony from maternal grandparents showing that his client stood *in loco parentis* to

Child, the trial court did not permit the development of an evidentiary record. *Id.* at 6, 12-13. Father's counsel indicated that, while his client did not oppose maternal grandparents spending as much time as they desired with Child during Mother's periods of physical custody, Father opposed Grandfather's request to intervene. *Id.* at 3, 8. Mother's counsel indicated that, although she remained under professional care, Mother is capable of parenting Child, but she did not oppose Grandfather's intervention. *Id.* at 3, 11.

At the conclusion of the hearing, the trial court stated its conclusion that Grandfather had not met the statutory criteria for grandparent standing and that it would deny the petition to intervene. *Id.* at 12-13. On January 19, 2022, the trial court entered an order denying the petition. Grandfather thereafter filed this timely appeal.[2] Before this Court, Grandfather raises the following issue: "Did the [trial c]ourt err when it denied [Grandfather's] Petition to Intervene without hearing any testimony to establish a factual record with which to base its decision or allow for the decision to be reviewed on appeal?" Grandfather's Brief at 3.

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *M.W. v. S.T.*, 196 A.3d 1065, 1069 (Pa. Super. 2018) (citation omitted). "Determining standing

---

[2] Grandfather properly filed his concise statement of errors concurrently with his notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i). The trial court filed its opinion on February 11, 2022. We note that an order denying a petition to intervene in a child custody action is appealable as a collateral order pursuant to Pa.R.A.P. 313. *See K.C. v. L.A.*, 128 A.3d 774 (Pa. 2015).

in custody disputes is [an] issue that must be resolved before proceeding to the merits of the underlying custody action." **C.G. v. J.H.**, 193 A.3d 891, 898 (Pa. 2018).

> The concept of standing, an element of justiciability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of. The purpose of this rule is to ensure that cases are presented to the court by one having a genuine, and not merely a theoretical, interest in the matter. Thus the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand.
>
> . . .
>
> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

**M.W.**, 196 A.3d at 1069 (citation omitted; some reformatting). "Grandparent standing to seek an order directing custody or visitation is a creature of statute, as grandparents generally lacked substantive rights at common law in relation to their grandchildren." **D.P. v. G.J.P.**, 146 A.3d 204, 212 n.13 (Pa. 2016).

Here, Grandfather argues that he should have been permitted to introduce evidence in the trial court to demonstrate his standing to intervene under Sections 5324 and 5325 of the Child Custody Act. Section 5324 provides that the "following individuals may file an action under this chapter for any form of physical custody or legal custody":

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

. . .

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[.]

23 Pa.C.S. § 5324(2), (3).

Section 5325 is more limited in scope as it is applicable only to grandparents and great-grandparents and allows them only to seek partial physical custody or supervised physical custody. As relevant here, the statute permits a grandparent to seek custody

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section[.]

23 Pa.C.S. § 5325(2).

Grandfather argues on appeal that there were facts at issue that necessitated a hearing to determine whether he had standing to intervene in the custody action initiated by Father. As to his claim of standing to seek primary physical custody of Child, Grandfather asserts that testimony would

have shown Mother's "incapacity" to parent Child due to her mental illness. 23 Pa.C.S. § 5324(3)(iii)(B). Further, Grandfather contends that Mother's mental illness resulted in maternal grandparents becoming Child's primary caregivers, thus allowing for standing based upon *in loco parentis* status. 23 Pa.C.S. § 5324(2). Grandfather argues that the trial court's reliance on Mother's counsel's representation that Mother can still adequately parent Child is not dispositive as counsel was not a mental health expert. Moreover, Grandfather contends that the fact that Mother resides at the same address as Grandfather would not defeat standing as this Court has held that the fact that a grandparent lives with and shares care responsibility with a parent does not disqualify the grandparent from having *in loco parentis* status. ***See M.J.S. v. B.B.***, 172 A.3d 651, 656 (Pa. Super. 2017).

Even assuming that he did not have standing to assert primary physical custody under Section 5324, Grandfather contends that he at least demonstrated grounds for an evidentiary hearing to assert standing for partial physical custody under Section 5325(2). Grandfather avers that, as to the critical factor under the statute of whether the parents "do not agree as to whether the grandparent[] . . . should have custody under this section," 23 Pa.C.S. § 5325(2)(ii), Father's counsel's representation at the hearing that Father does not object to Grandfather spending time with Child during Mother's periods of physical custody did not answer the critical question of whether he would consent to Grandfather having his own periods of partial custody. Grandfather asserts that, absent testimony from Father that

Grandfather could have his own custody of Child "separate and apart from [P]arent[s'] custodial times," Parents do not agree under the statute and Grandfather should be entitled to "intervene to argue for [his] own time with" Child. Grandfather's Brief at 26.

Upon review, we find no error in the trial court's denial of Grandfather's petition to intervene without holding a hearing. This Court has observed that "[w]hile standing issues sometimes can turn on pure questions of law, they more commonly turn on questions of fact." **C.G. v. J.H.**, 172 A.3d 43, 54 (Pa. Super. 2017) (footnote omitted), **affirmed**, 193 A.3d 891 (Pa. 2018); **see also Raymond v. Raymond**, ___ A.3d ___, 2022 PA Super 124, at *4 (Pa. Super. 2022). Thus, we have explained that where an individual asserts a "colorable claim to standing" in a child custody dispute, a parent objects to the individual's participation in the custody action, and standing does not hinge on a strictly legal issue, the trial court should hold a hearing, make findings of fact, and resolve the issue of standing based upon those findings. **C.G.**, 172 A.3d at 54-56 & n.8.

In this matter, Grandfather has not alleged a "colorable claim to standing" that necessitated an evidentiary hearing prior to the trial court's denial of his petition to intervene. **Id.** at 55. First, we note that Grandfather's petition to intervene is completely devoid of any factual allegations that would support his claim for standing to seek custody of Child. Instead, Grandfather simply averred that he "should be made a party to the . . . custody action because [he] has standing for custody pursuant to 23 Pa.C.S. § 5325(2) or

5324(3)(i), (ii), (iii)(B)" and baldly asserted that the "best interests and permanent welfare of [C]hild shall be served by" allowing intervention. Petition to Intervene, 10/29/21, ¶¶8-9. Therefore, Grandfather did not apprise Parents in his petition of the factual basis to support his claim for standing to seek custody of Child in violation of our rules of civil procedure which mandate that a party seeking standing "plead facts establishing standing."[3]

Even putting aside the deficiencies in Grandfather's petition, his standing claims were properly rejected by the trial court in the absence of an evidentiary hearing. Concerning Grandfather's request to intervene under

_____

[3] Rule 1915.3 provides as follows:

**(e) Pleading Facts Establishing Standing.**

(1) An individual seeking physical or legal custody of a child, who is *in loco parentis* to the child, shall plead facts establishing standing under 23 Pa.C.S. § 5324(2) . . .

(2) A grandparent seeking physical or legal custody of a grandchild, who is not *in loco parentis* to the child, shall plead facts establishing standing under 23 Pa.C.S. § 5324(3) . . .

. . .

(4) A grandparent or great-grandparent seeking partial physical custody or supervised physical custody of a grandchild or great-grandchild shall plead facts establishing standing under 23 Pa.C.S. § 5325 . . .

Pa.R.Civ.P. 1915.3(e)(1), (2), (4). This rule also provides that a non-parent who seeks custody should do so by filing a complaint in the form set forth in Pa.R.Civ.P. 1915.15(a); however, the trial court did not base its denial of Grandfather's intervention on his failure to seek custody of Child in the prescribed form. *See* Pa.R.Civ.P. 1915.3(e).

Section 5324(3), relating to the right of a grandparent who is not *in loco parentis* to the subject child, Grandfather correctly observes that the sole factor at issue was whether "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity." 23 Pa.C.S. § 5324(3)(iii)(B).[4] While Grandfather's counsel stated at the hearing that the testimony of maternal grandparents would have shown that Mother's mental health condition prevented her from adequately caring for Child and that the grandparents were engaged in the day-to-day parenting in place of Mother, this evidence would only bear upon the care provided by Mother and ignored Father's responsibility as a parent to Child. Father initiated the present matter by filing a custody complaint and had already been awarded shared legal and partial physical custody of Child in an interim order. Grandfather did not indicate that he was prepared to present evidence that Child was "substantially at risk" due to Father's "abuse, neglect, drug or alcohol abuse or incapacity," *id.*, or that Father would be unable to supply the necessary care to Child that Mother's condition prevented her from doing. Moreover, Grandfather gave no indication that Mother's mental health condition placed Child in immediate danger that prevented him from receiving adequate care prior to the

_____

[4] Grandfather satisfied the other two factors for standing under Section 5324(3) as it is undisputed that he had a "relationship with the child [that] began . . . with the consent of a parent" and he represented to the court that he "assumes or is willing to assume responsibility for the child." 23 Pa.C.S. § 5324(3)(i), (ii); Petition to Intervene, 10/29/21, ¶7.

resolution of the custody proceedings.[5]  Therefore, Grandfather's proffered testimony would not have been sufficient to show standing under Section 5324(3).

Furthermore, with respect to Grandfather's argument that he should be permitted to intervene in the custody action as "[a] person who stands in loco parentis to the child," 23 Pa.C.S. § 5324(2), Grandfather did not cite the relevant subsection of the Child Custody Act or raise this basis for standing in his petition to intervene, and Parents were not able to adequately prepare and respond to his claim.  **See** Trial Court Opinion, 2/11/22, at 7 (stating that, because *in loco parentis* was not raised in the petition and Father did not have the opportunity to prepare a defense, the trial court dismissed the claim); **see also** Pa.R.Civ.P. 1915.3(e).  Moreover, *in loco parentis* status cannot be achieved without the consent and knowledge of the parents; here, no allegation has been put forth that Father in any way consented to Grandfather standing *in loco parentis* to Child.  **See T.B. v. L.R.M.**, 786 A.2d 913, 917 (Pa. 2001) ("The third party in this type of relationship, however, can not place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship."); **K.W. v. S.L.**, 157 A.3d 498, 505 (Pa. Super. 2017) ("[*I*]n loco parentis status cannot be achieved without the consent and

_____

[5] We note that, when awarding custody, the trial court shall consider "[t]he mental and physical condition of a party" among the other relevant statutory custody factors.  23 Pa.C.S. § 5328(a)(15).

knowledge of, and in disregard of[,] the wishes of a parent.") (citation omitted).

Finally, we are unpersuaded by Grandfather's claim that he should have been permitted to present evidence to show that he had standing to claim partial physical custody under Section 5325(2). In order to qualify for standing under this subsection, a grandparent must show that he began a relationship with the child with the consent of a parent and that a custody proceeding has commenced—both of which factors are undisputedly satisfied here—and also that Parents "do not agree as to whether the grandparent[] . . . should have custody under this section." 23 Pa.C.S. § 5325(2)(ii). Grandfather's contention that Father should have been required to testify as to whether he would consent to Grandfather having exclusive periods of partial physical custody so as to determine whether there is any disagreement between Parents puts the cart before the horse, as Grandfather is demanding an evidentiary hearing to flesh out his standing claim without first making any allegations to substantiate it. Grandfather did not make any representation to the trial court that he had ascertained that a disagreement existed between Parents, including on the question of whether Mother would consent to him having any period of partial physical custody over Child. Therefore, Grandfather failed to demonstrate an unresolved question of fact that required that the trial court accept evidence on the issue.

Accordingly, because Grandfather did not present a "colorable claim of standing," the trial court properly denied intervention in the custody dispute

between Parents without holding a hearing. **C.G.**, 172 A.3d at 55. In affirming the trial court's denial of the petition to intervene, we note that, as stated in prior cases, the concept of standing in child custody cases is "fluid" and can be re-evaluated if factual circumstances change. **E.A. v. E.C.**, 259 A.3d 497, 501 (Pa. Super. 2021); *see also M.W.*, 196 A.3d at 1071.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/29/2022