J-A09004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DERECK WISCHMEYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MORGAN NATI | : | |
| | : | |
| | : | No. 1334 WDA 2024 |
| APPEAL OF: TERESA STEELE | : | |

Appeal from the Order Entered September 27, 2024
In the Court of Common Pleas of Washington County Civil Division at
No(s): 2018-6893

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:      **FILED: May 15, 2025**

Teresa Steele (Maternal Grandmother or Grandmother) appeals the order issued by the Washington County Court of Common Pleas, which denied her Petition to Intervene in the custody case between Dereck Wischmeyer (Father) and Morgan Nati (Mother) related to their now six-year-old daughter, L.W. (the Child).[1] After review, we affirm.

The record discloses the following factual and procedural history. In December 2018, Father filed a complaint against Mother for primary physical and legal custody of the Child. In February 2019, a custody order was filed with the consent of the parties. The consent custody order provided for Father and Mother to equally share legal and physical custody of the Child.

---

[1] The order is appealable as a collateral order pursuant to Appellate Rule 313. **See** Pa.R.A.P. 313; **M.S. v. J.D.**, 215 A.3d 595, 596 n.1 (Pa. Super. 2019).

Over five years later, in September 2024, Grandmother filed a Petition to Intervene in the custody case. Grandmother claimed she had standing to pursue partial physical custody of the Child under Section 5325(2) of the Child Custody Act.

Father and Mother filed a joint reply to Grandmother's petition and a new matter. They argued that Grandmother did not have standing under Section 5325(2) because: 1) they had not commenced a custody proceeding as the underlying custody action was resolved in February 2019 by the consent custody order; and 2) they agreed that Grandmother should not have any form of custody or other contact with the Child.

On September 27, 2024, the trial court denied Grandmother's petition based on the parents' agreement that she should not have contact with the Child. Grandmother filed a Motion for Reconsideration, which was denied. She then timely filed this appeal. She presents the following three issues for our review:

1. Whether the lower court erred and/or abused its discretion by denying [Grandmother's] Petition to Intervene, she filed pursuant to 23 Pa.C.S. § 5325(2).

2. Whether the lower court erred and/or abused its discretion by denying the [] [G]randmother's Petition to Intervene in this case based upon both natural [F]ather and [M]other agreeing that [] [G]randmother should not have contact with the [Child].

3. Whether the lower court . . . erred and/or abused its discretion by misinterpreting or misapplying 23 Pa.C.S. § 5325(2) when, the record demonstrates and proves the [Grandmother] had a relationship with the [C]hild that

- 2 -

began with the consent of both parents, the parents had commenced a proceeding for custody and the parents do not agree as to whether the grandparent should have custody rights under Section 5325(2).

Grandmother's Brief at 6-7.

Grandmother's issues are related, and she provided only one Argument section in her brief. Thus, we address these issues contemporaneously, which all concern Grandmother's standing to intervene in the custody case.

Threshold issues of standing are questions of law. *M.S. v. J.D.*, 215 A.3d 595, 598 (Pa. Super. 2019) (citing *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017)). Thus, our standard of review is *de novo*, and our scope of review is plenary. *Id.* (citation omitted).

The Child Custody Act generally "does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." *Id.* at 598-99 (citation omitted). Grandparents may have standing to seek partial physical custody or supervised physical custody under Section 5325(2), which provides:

> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> [. . .]
>
> (2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

- 3 -

> (i) have commenced a proceeding for custody; and
>
> (ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section[.]

23 Pa.C.S.A. § 5325(2).

Here, the trial court denied Grandmother's petition based on Father's and Mother's agreement that she should not have contact with the Child. **See** Trial Court Opinion (T.C.O.), 11/13/24, at 4-5. Thus, the court's analysis focused on Section 5325(2)(ii). The court made the following findings of fact, in relevant part:

> Maternal Grandmother has had contact with [the Child] in the past with the consent of at least one of the parents. Mother and the [Child] would stay at the former home of Maternal Grandmother for two or three days at a time, from time to time. Maternal Grandmother continued to have contact with the [C]hild until Mother gradually reduced the contact and then terminated contact in late 2023. Maternal Grandmother attempted to work through Mother to see the [C]hild, but Mother refused to let Maternal Grandmother have any contact with the [C]hild. Mother and Father agree that Maternal Grandmother shall not have any form of custody or other contact with the [C]hild.

**Id.** at 3 (record citations omitted). In the trial court's view, because Mother and Father agree that Grandmother should not have custody, the predicate disagreement under Section 5325(2)(ii) does not exist, and Grandmother does not have standing. **See id.** at 5. To support its contention, the court cited this Court's decisions in **E.A. v. E.C.**, 259 A.3d 497 (Pa. Super. 2021) and **M.S., supra**. **See id.**

On appeal, Grandmother presents several arguments related to Section 5325(2)(ii). She asserts that the language of that section does not explicitly support the trial court's decision. *See* Grandmother's Brief at 20. She argues that the court's decision is contrary to the legislative intent of the General Assembly and leads to an absurd and unreasonable result. *See id.* at 18-21. Thus, according to her, we must interpret the statute under The Statutory Construction Act of 1972, and the legislative intent must control. *See id.* at 19.

Grandmother proposes that the trial court's analysis breaks down into three possible scenarios. The first is where one parent agrees and one parent disagrees with the grandparent having custody. *See id.* at 21. There, the grandparent would have standing to intervene but intervention would be unnecessary because the grandparent could further their relationship with the child through the agreeing parent. *See id.* The second scenario is where both parents agree that the grandparent should have custody. *See id.* There, the grandparent would not have standing, even though the parents agree. *See id.* According to Grandmother, the General Assembly would not have intended that outcome if the parents' intent is the only dispositive factor. *See id.* The third scenario is where both parents disagree that the grandparent should have custody. *See id.* at 22. There, the grandparent would not have standing, even if it would be in the child's best interest and even if the parents' agreement is in bad faith or to conceal wrongdoing. *See id.* She cites this

Court's decision in **G.A.P. v. J.M.W.**, 194 A.3d 614 (Pa. Super. 2018) to support her contention that the legislature enacted Section 5324 (which was the relevant statute in **G.A.P.**) and Section 5325 to confer standing on grandparents, not to deny standing based on the whims of any party, including a parent. **See id.** at 23-24.

Grandmother's arguments are unavailing. This Court has previously examined the language of Section 5325(2)(ii) and has determined it to be clear and unambiguous. Thus, contrary to Grandmother's assertions, we need not revisit the statutory analysis.

This Court's prior decisions in **E.A. v. E.C.** and **M.S. v. J.D.** have resolved this issue. **E.A.**, like this case, dealt with a grandparent's petition to intervene in a custody action, and the grandparent asserted standing under Section 5325(2). **See E.A.**, 259 A.3d at 499. This Court interpreted that section and determined that "we need not engage in a lengthy statutory analysis because the words of the statute are clear and free from all ambiguity." **Id.** at 501. Specifically for Section 5325(2)(ii), this Court reiterated "[t]he words of this provision are clear and unambiguous . . . ." **Id.** at 504. We explained:

> [T]he plain language of the statute confers standing to grandparents and great-grandparents to intercede in custody litigation when the parents "do not agree" as to the nature of the third-party's interaction with their child. Hence, . . . the Child Custody Law does not extend standing to grandparents to file for partial physical custody under this section when the predicate disagreement no longer exists.

***Id.***

Here, there was never a predicate disagreement between Mother and Father regarding Grandmother's interaction with the Child. Since their initial reply to her petition, both parents have steadfastly agreed that Grandmother should not have custody of the Child. ***See*** Reply to Petition to Intervene, 9/24/24. The parents have continued this agreement on appeal. ***See*** Father's and Mother's Brief at 6-8. Further, in her reply to Mother's and Father's new matter, Grandmother stated that she "admits that both Mother and Father will not agree to allow [her] to have any contact with the [C]hild. That is the reason this action is being brought." Reply to New Matter, 9/24/24, at 3 (unnumbered). As a matter of law, the parents' agreement precludes her standing under Section 5325(2)(ii).

In ***M.S. v. J.D.***, this Court also considered the language in Section 5325(2)(ii) and stated:

> In her appellate brief, [g]randmother abandons any argument regarding the interpretation of the phrase "do not agree" in section 5325(2)(ii). However, even if we were to consider this argument we do not find the language in section 5325(2)(ii) is either unclear or ambiguous. Under section 5325(2)(ii), a grandparent may file an action for partial physical custody or supervised physical custody "where the parents of the child ... do not agree as to whether the grandparents ... should have custody under this section." Here, there is no dispute that [m]other and [f]ather agree that [g]randmother should not have custody. Thus, the court properly denied [g]randmother's petition under section 5325(2)(ii).

*M.S.*, 215 A.3d at 601 n.9 (internal citation omitted). Thus, as in *M.S.*, Grandmother lacks standing under Section 5325(2)(ii) because Mother and Father clearly agree that she should not have custody. *See* 23 Pa.C.S.A. § 5325(2)(ii).

We are also unpersuaded by Grandmother's citation to *G.A.P. v. J.M.W.* That case does not apply because it dealt with standing under Section 5324, not Section 5325. Further, Grandmother's argument that the legislature intended to confer standing on grandparents, not deny it based on any party's whims,

> ignores three settled principles regarding standing to participate in child custody litigation: (1) standing in child custody may be inconstant; (2) fit parents have a fundamental right to parent without governmental interference; and (3) where there is no dispute between parents whether to permit interactions with third parties, court-mandated associations with third parties intrudes upon the parents' constitutional prerogatives.

*E.A.*, 259 A.3d at 503 (citations and footnote omitted). Here, as the Child's parents, it is Mother's and Father's constitutional prerogative to decide whether Grandmother could interact with their child. *See id.* They have decided not to allow that contact, and there is no dispute between them regarding this decision. *See* Father's and Mother's Brief at 8. Thus, Grandmother does not have standing to petition for custody under Section 5325(2).

Lastly, we reject Grandmother's arguments related to the Child's best interests. The issue before the trial court was whether Grandmother had

standing to intervene in the custody proceeding. Standing is a threshold legal question separate from the best interests of the Child. **See M.S.**, 215 A.3d at 601-02 (concluding "that the trial court properly limited its standing analysis to the statutory elements under section 5325(2)(ii) and that, had it delved into the best interests of [c]hild and the fitness of parents, it would have contravened the established bifurcation process inherent in parent-grandparent custody issues under that statute") (citing **K.C. v. L.A.**, 128 A.3d 774, 779 (Pa. 2015)). In her brief, Grandmother concedes that standing is a threshold question that must be determined prior to any best interests analysis. **See** Grandmother's Brief at 16-17 ("Standing in a custody action is a threshold question that must be satisfied in order to proceed to the merits of the custody case based on the best interest of the child.") (citation omitted). Thus, we do not reach the Child's best-interests inquiry in this case. Simply stated, Grandmother's issues merit no relief.

In sum, we discern no error of law or abuse of discretion in the trial court's decision to deny Grandmother's Petition to Intervene under Section 5325(2). Mother and Father agree that Grandmother should not have custody, thus, she lacks standing.[2] **See** 23 Pa.C.S.A. § 5325(2)(ii).

Order affirmed.

---

[2] Because we affirm the court's decision that Grandmother lacks standing under Section 5325(2)(ii), we need not reach Mother's and Father's argument that she also lacks standing under Section 5325(2)(i), regarding whether they have commenced a custody proceeding.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/15/2025