J-A11006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| S.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.H. | : | No. 1654 MDA 2024 |
| v. | : | |
| | : | |
| | : | |
| B.H. | : | |

Appeal from the Order Entered October 22, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2021-FC-001007-03

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED: MAY 16, 2025**

In this child custody action, S.P. (Mother), biological mother of A.P. (a daughter born in December 2013) and R.H. (a son born in October 2017) (collectively, Children), appeals, *pro se*, from the trial court's October 22, 2024, order awarding, *inter alia* , 1) Mother primary physical custody and sole legal custody of Children; 2) B.H., paternal grandfather (Grandfather), partial physical custody of Children, as well as access to educational, therapeutic,

_____

* Former Justice specially assigned to the Superior Court.

and medical information concerning Children; and 3) K.H. (Father)[1] telephonic and/or video contact with Children, consistent with the regulations and protocols of the Department of Corrections. After careful consideration, we affirm in part, and reverse in part.

The trial court summarized the underlying factual and procedural history:

> Mother and Father [] have been in custody proceedings that began in Lebanon County[, Pennsylvania,] in 2018 related to … Children[]. After Father was charged with sexual offenses unrelated to Children, Mother petitioned a Lebanon County court for modification of a January 23, 2019[,] custody order, which [had] granted Mother and Father shared legal custody, Father primary physical custody, and Mother partial physical custody. Mother sought sole legal and sole physical custody of Children, and[, on August 2, 2021,] Grandfather [] filed a petition to intervene. [On August 10, 2021, Mother filed preliminary objections to Grandfather's petition to intervene, challenging, *inter alia*, Grandfather's standing.] Subsequently, Mother moved successfully for transfer [of the case] to York County[, Pennsylvania.][2] Father pleaded no contest to the [sexual offenses][3] and[, on August 4, 2021,] was sentenced to [] four-and-one-half to ten years of incarceration.

_____

[1] We hereinafter refer to Father and Grandfather, collectively, as "Appellees." Appellees are biologically related to R.H., but not A.P.

[2] On September 21, 2021, Lebanon County Judge Samuel A. Kline (Judge Kline) transferred the parties' custody case to York County. Order, 9/21/21, at 1 (unpaginated). Judge Kline did not determine whether Grandfather had standing to intervene. **See id.** (Judge Kline indicating that the parties' numerous issues should be adjudicated in York County).

[3] Father pleaded *nolo contendere* to statutory sexual assault, involuntary deviate sexual intercourse of a child, aggravated indecent assault, corruption of minors, sexual abuse of children, unlawful communication with a child, and indecent assault. **See** 18 Pa.C.S.A. §§ 3121.1(b), 3123(b), 3125(a),
*(Footnote Continued Next Page)*

Trial Court Opinion, 12/9/24, at 1 (footnotes added).

Relevantly, in his petition to intervene, Grandfather only asserted legal standing to seek custody of Children pursuant to 23 Pa.C.S.A. § 5325(2),[4] averring as follows: "[Grandfather's] relationship with [Children] began with the consent of … Father. The parents of [C]hildren have commenced a proceeding for custody[,] and it is believed that [] Mother … does not agree

_____

6301(a)(1)(ii), 6312, 6318, 3126. Following Father's *nolo contendere* pleas, the parties' custody matter proceeded to a risk of harm hearing, whereafter Judge Kline "deem[ed Father] not [to be] a risk of harm [to Children,] and authorize[d] proceeding on th[e] custody matter." Order, 9/21/21, at 1 (unpaginated).

[4] Section 5325(2) provides:

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

* * *

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents and or great-grandparents should have custody under this section[.]

23 Pa.C.S.A. § 5325(2).

- 3 -

with [] Father … that [G]randfather should have any periods of custody." Petition to Intervene, 8/2/21, ¶ 8.

On November 21, 2021, Mother filed a motion in York County to schedule a case management conference, which was granted, and held on December 7, 2021. At the conclusion of the conference, the trial court issued an order determining that, "since conciliation was already held and a temporary order already issued in Lebanon County,[5] this matter is ripe for [a] pre-trial conference." Order, 12/9/21, at 2 (footnote added). The trial court scheduled the pre-trial conference, at the parties' request, for January 26, 2022. *Id.* By joint motion, the parties requested a continuance of the pre-

_____

[5] The temporary order issued in Lebanon County is not contained within the voluminous certified record. Significantly, however, in its February 8, 2022, "Order Scheduling Custody Trial" (the scheduling order), the trial court references a Lebanon County order (the August 2021 custody order), "entered on August 16, 2021," but "dated August 30, 2021." Scheduling Order, 2/8/22, at 2. The trial court describes the August 2021 custody order as granting Mother sole legal custody of Children, and "suspending partial custody in Father until further order[,] in light of Father's criminal convictions." *Id.*; *see also* N.T., 2/8/22, at 12 (counsel for Appellees stating, "the current custody order out of Lebanon [County] grants Mother sole legal and … sole physical custody because Father[ is] incarcerated." (some capitalization modified); N.T., 4/7/22, at 4 (counsel for Appellees confirming Father was only seeking rights to information concerning Children, and stating, "We are asking [for] very minimal [rights] for [F]ather until he[ is] released from incarceration[,] which at that point in time … he would have to file to modify.").

- 4 -

trial conference.[6]  The trial court continued the pre-trial conference to February 8, 2022.

At the pre-trial conference, Mother, through counsel,[7] indicated that, while she did not oppose Grandfather having contact with Children at Mother's discretion, she opposed the visitation requested by Grandfather.  N.T., 2/8/22, at 3; *see also id.* (Mother's counsel indicating Mother believed Grandfather was "asking for time as a back door so that [F]ather can have contact with [Children] outside of [Mother's] awareness.").

Pertinently, at the pre-trial conference, the following exchange occurred between the trial court and Mother's counsel concerning Grandfather's standing:

> THE COURT: … [R]elative to standing, [G]randfather is asking only [for] bare-bones grandparents['] rights under [Section] 5325. Tell me why [G]randfather wouldn't have standing under [Section] 5325[,] since there have been custody proceedings and the parties don't agree on whether [G]randfather should have any custodial right[s]?  That looks like a slam dunk to me for standing, but tell me if I'm wrong.
>
> [Mother's counsel]: Your Honor, I don't have a legal basis for stating that you're wrong at this point.  It's a matter that [Mother] and I have discussed[,] and we have not resolved at this point[,] so I leave it to Your Honor.

---

[6] The parties explicitly waived the timeliness requirements attendant to initial custody conferences.  **See** Joint Motion for Continuance, 1/25/22, at 1 (unpaginated); **see also** Pa.R.C.P. 1915.4(a) (directing that initial contact with the court occur within 45 days from the filing of a custody complaint).

[7] Several different attorneys have represented Mother throughout the underlying custody case.  Since May 31, 2022, including in the instant appeal, Mother has acted *pro se*.

....

> THE COURT: [Grandfather has] standing **under Section 5325 only**. And, therefore, [Grandfather] should be added to the caption, but [M]other's question of [A.P.] and [F]ather's relationship[,] since [Father] apparently is not the biological father[ of A.P.], that is reserved for trial.

*Id.* at 7-8 (emphasis added); **see also** Scheduling Order, 2/8/22, at 6 (the trial court finding that "Grandfather has standing under [S]ection 5325 only ....").

The matter proceeded to trial on April 7, 2022, and June 2, 2022. Father appeared by video from the state correctional institution in Phoenix, Pennsylvania, represented by counsel. Grandfather appeared, represented by the same counsel. Mother appeared, represented, on the first day of trial,[8] by counsel.

Before the parties presented witness testimony, the trial court interviewed A.P. in chambers in the presence of counsel.[9] Thereafter, in open court, the trial court summarized portions of its interview with A.P., stating that A.P. (1) was "intelligent and articulate"; (2) referred to Grandfather as

---

[8] On May 5, 2022, Mother filed an "Entry of Appearance as a Self-Represented Party."

[9] The certified record discloses that the trial court's *in camera* interview with A.P. was recorded, but not transcribed and made a part of the record. N.T., 4/7/22, at 15.

"Pop Pop"; and (3) "wasn't real eager to spend a lot of time with [Grandfather]." N.T., 4/7/22, at 15-17.

Father testified concerning his and Grandfather's relationship with Children. *Id.* at 21. Father testified that he is not the biological father of A.P., but explained he had been romantically involved with Mother since before A.P.'s birth, and treated A.P. as his own child. *Id.* at 22. Father testified that he and Mother remained in their relationship until A.P. was approximately three years old. *Id.* at 23. According to Father, he had been involved in Children's lives until his incarceration in August 2021, overseeing their education and attending their medical appointments. *Id.* at 24-25, 29.

Father claimed that Grandfather had consistently been involved in Children's lives, visiting both Children in the hospital shortly after their respective births. *Id.* at 27. Father testified that Grandfather (1) visited Children "once every month to every other month"; (2) assisted in diapering and feeding Children as infants; (3) showed each Child affection; and (4) treated Children "equally as if they were his own biological grandchildren[.]" *Id.* at 27-28. Father testified that as recently as July 2021, Grandfather exercised overnight custody of Children for four consecutive days. *Id.* at 29. Father opined that Children never appeared afraid of Grandfather and seemed "to have fun with [G]randfather." *Id.* at 30. Father further testified that, during Father's custodial periods, Children would communicate with Grandfather by video "[a]t least four times a week." *Id.* at 34.

Grandfather confirmed that he has been involved in Children's lives since their births. *Id.* at 55-56. Grandfather testified that Children refer to him as "Pop Pop." *Id.* at 59. Grandfather explained that although he had not seen Children since Father's incarceration, Grandfather previously had an active relationship with Children, seeing them at least once a month, and speaking with Children through online video chats "[t]hree or four times a week." *Id.* at 62-63. According to Grandfather, he has been unable to have a relationship with Children after Father's incarceration, because Mother "cut me off. She blocked me." *Id.* at 64.

Following Grandfather's testimony, the trial court adjourned the proceedings and scheduled the matter for a second day of testimony. *Id.* at 76. The trial court dictated a temporary custody order granting Mother sole legal and primary physical custody of Children; however, the trial court directed Mother to supply Father with "all [of Children's] educational, medical, counseling, and all other records …." *Id.* at 76.[10] The trial court further granted Grandfather partial physical custody of Children, to occur once per month, for nine hours, on the first Saturday of each month. *Id.* at 77. Additionally, the trial court granted Grandfather "phone or video"

_____

[10] Although the trial court permitted telephonic contact between Father and R.H., it specifically forbade contact in any form between Father and A.P. N.T., 4/7/22, at 83.

communication with Children "at least three times per month" "as he may arrange with [M]other[.]" *Id.*

After reconvening on June 2, 2022, Mother, now *pro se*, testified on her own behalf. According to Mother, Grandfather had "never previously showed an interest" in having the type of relationship with Children that he was requesting the trial court to order. N.T., 6/2/22, at 6. Mother admitted to blocking Grandfather on her social media accounts, but claimed she did so "due to [Grandfather's] own behavior of sending me rude messages." *Id.* Mother testified that she had made efforts since the first day of trial to facilitate visitation and communication between Grandfather and Children, but stated that she and Grandfather were unable to agree on mutually acceptable terms. *Id.* at 9. On cross-examination, however, Mother was largely unwilling to agree to any proposed court-ordered periods of communication or visitation between Children and Grandfather. *See id.* at 22-25.

The trial court explained that, following the custody trial, the trial court issued

> what the court designated and believed to be a final custody order on June 2, 2022. Mother was awarded sole legal custody and primary physical custody[ of Children]. Grandfather was awarded partial physical custody [of Children] for ten hours on alternating Saturdays, and access to school, medical, and counseling information. However, due to testimony regarding Mother's lack of compliance[ with the April 2022 temporary custody order], the court scheduled a follow-up hearing, [to occur on] September 6, 2022, to assess how phone contact with Grandfather was going, … etc. The court contemplated potentially expanding Father's and/or Grandfather's rights or hearing any contempt petition

during the review hearing if Mother was still not abiding by the court's orders.

… At the follow-up hearing on September 6, 2022, Mother remained non-compliant.

Trial Court Opinion, 12/9/24, at 2-3 (record citations omitted; footnotes added; some punctuation modified).

Significantly, at the September 6, 2022, hearing, Mother again raised the issue of standing:

[Mother]: [I]f I am correct, the [trial c]ourt does not hold subject matter jurisdiction to be dealing with this matter in the first place, which would be --

THE COURT: You can appeal to the Superior Court.

[Mother]: -- which would be an issue for you. Because if the [trial c]ourt does not have subject matter jurisdiction, the case must be dismissed immediately ….

THE COURT: Why do you think we don't have subject matter jurisdiction?

[Mother]: Well, to start out with[,] you are applying [Section] 5325[,] using a section that would suggest a[] tiebreaker between two parties with equal rights. And this is a case where one parent has already been given sole custody. That was determined before we even made it down to York[ County], which is legally defined as the exclusive right to make major decisions.

THE COURT: Ma'am, I can change that to joint legal custody any time I want.

N.T., 9/6/22, at 7-8. The trial court did not further address Mother's challenge to Section 5325.

At the conclusion of the September 6, 2022, hearing,

[t]he court admonished Mother … and scheduled an additional follow-up hearing for December 13, 2022, advising Mother that she had the right to appeal[ the trial court's custody determination]. Mother did appeal the April 7, 2022, June 2, 2022, and September [7], 2022[,] orders, without any assertion of error regarding Grandfather's standing. However, upon appellate review, … the Pennsylvania Superior Court determined that there was no final order of custody yet, since the [trial] court indicated that it could still make changes to Father's or Grandfather's rights[,] and [the Superior Court] determined it did not yet have jurisdiction to hear the appeal. [*See S.P. v. K.H. & B.H.*, 1417 MDA 2022 (Pa. Super. 2023) (unpublished memorandum at 4-5).] After various other proceedings[11] and appeals,[12] … the court [conducted a final custody hearing on October 7, 2024, and] entered a final order of custody [that same day]….[13]

_____

[11] Pertinently, following the custody trial, Mother filed, *inter alia*, a motion to disqualify the trial court, and a motion for change of venue. **See** Motion to Disqualify, 5/23/24, at 1 (unpaginated) (Mother asserting the trial court had exhibited bias in favor of Grandfather throughout the custody proceedings); Moton for Change of Venue, 5/23/24, at 1 (unpaginated) (Mother requesting the trial court transfer the custody matter to Schuylkill County, where Mother claimed she had been residing for six months from the date of filing). The trial court denied both motions. Order, 7/8/24, at 2.

Additionally, on March 29, 2024, Mother filed a federal lawsuit claiming that the trial court, among others, violated her civil rights. **See *S.P. v. Menges***, No. 1:24-CV-537, 2024 U.S. Dist. LEXIS 196144, at *6 (M.D. Pa. Oct. 29, 2024).

[12] On May 11, 2023, the trial court found Mother in contempt for failing to comply with the June 2, 2022, custody order. Mother appealed, and we affirmed. **See *S.P. v. K.H. & B.H.***, 772 MDA 2023 (Pa. Super. 2024 (unpublished memorandum at 7). On October 7, 2024, the trial court again found Mother in contempt for failing to comply with court orders; Mother appealed, and that case is before this Court at 1558 MDA 2024.

[13] On October 22, 2024, the trial court issued an amended order "correcting grammatical errors[.]" Order, 10/22/24, at 1 (some capitalization modified).

Trial Court Opinion, 12/9/24, at 2-3 (record citations omitted; footnotes added; punctuation modified).

The trial court scheduled the October 7, 2024, custody hearing to hear testimony relative to Grandfather's July 28, 2023, petition for modification of custody, wherein Grandfather sought "shared legal and shared physical custody" of Children. Petition for Modification of Custody, 7/28/23, ¶ 5; *see also* N.T. (Pre-Trial Conference), 7/5/24, at 2 (the trial court stating, "[W]e are scheduling a trial today on [G]randfather's petition to modify."). *But see* N.T., 10/7/24, at 15 (Grandfather conceding that he could only pursue partial physical custody under Section 5325); *id.* at 79 (the trial court denying, as violative of Mother's due process rights, Grandfather's request to assert standing pursuant to 23 Pa.C.S.A. § 5324 ("Standing for any form of physical custody or legal custody"), which Grandfather raised for the first time during the October 7, 2024, custody hearing).

The October 7, 2024, hearing also served as a contempt hearing for Mother's alleged violations of the prior custody orders, the details of which are irrelevant to our disposition. Prior to moving into the modification portion of the hearing, the trial court found Mother in contempt, and sentenced her to

serve six months in York County Prison, unless and until she could satisfy certain purge conditions.[14]

During the modification portion of the October 7, 2024, hearing, the trial court interviewed Children, heard testimony from Appellees and Mother, and thereafter issued a final custody order, outlining the parties' custody rights to Children before and after Mother's incarceration. During Mother's incarceration, the trial court awarded Grandfather sole legal and sole physical custody of Children. Order, 10/7/24, at 2. After Mother's release from York County Prison, the trial court awarded (1) Mother sole legal and primary physical custody of Children; (2) Father telephonic and video communication with Children; and (3) Grandfather partial physical custody of Children. *Id.* at 3-6.

Mother timely filed a *pro se* notice of appeal, and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement. The trial court has also complied with Pa.R.A.P. 1925.

Mother raises the following nine issues for our review:

1. Did the trial court commit an error of law, fundamental and constitutional error, and abuse its discretion by finding standing under 23 Pa.C.S.A. § 5325(2) and asserting jurisdiction over this third-party intervention?

---

[14] Mother purged her contempt, and was released from incarceration on October 17, 2024, after serving ten days' incarceration.

2.   Did the trial court commit an error of law and abuse its discretion by misapplying the Psychological Parent Doctrine and improperly extending it to include a "psychological grandparent"?

3.   Did the trial court err and abuse its discretion by delaying the entry of a final custody order and improperly conducting a second trial under the guise of modification?

4.   Did the trial court commit an error of law and abuse its discretion in failing to recuse or disqualify itself despite clear evidence or appearance of bias, ill will, and/or malice?

5.   Did the trial court commit an error of law and abuse its discretion by awarding partial custody to Grandfather without properly weighing the statutory factors under 23 Pa.C.S.A. § 5328, upholding the constitutional protections and presumption favoring a fit parent, and adhering to public policy restricting third-party custody to exceptional circumstances?

6.   Did the trial court commit an error of law and abuse its discretion by granting Grandfather legal information rights under 23 Pa.C.S.A. § 5336 without meeting statutory requirements?

7.   Did the trial court commit an error of law and abuse its discretion by modifying custody provisions for Father without properly considering the potential harm to [C]hildren under 23 Pa.C.S.A. § 5330, as required for a parent with a conviction under [Section] 5329(a), and by denying [Mother] notice and an opportunity to be heard?

8.   Did the trial court commit an error of law, a constitutional error, and abuse its discretion by granting Grandfather sole physical and legal custody, violating the presumption of custody in favor of [Mother] under 23 Pa.C.S.A. § 5327 and infringing upon her due process rights?

9.   Did the trial court commit an error of law and abuse its discretion in continuing to exercise jurisdiction over the custody matter following the Motion for a Change of Venue?

Mother's Brief at 6-8 (issues reordered; some formatting modified).

In her first issue, Mother challenges the trial court's determination that Grandfather had standing to pursue custody of Children pursuant to Section 5325(2). Mother's Brief at 16. Mother faults the trial court for "prematurely and erroneously assert[ing] that standing under [Section] 5325(2) was a 'slam dunk,' based on the mere appearance that the statutory elements were satisfied." *Id.* at 18. Mother emphasizes that Section 5325(2) only confers standing to a grandparent where, *inter alia*, there is "a disagreement between the parents regarding grandparental custody rights." *Id.* at 21 (citing 23 Pa.C.S.A. § 5325(2)). Mother argues that the trial court "disregarded the critical fact that, as of August 2021, [Mother] had sole physical and legal custody of [C]hildren pursuant to an interlocutory order entered with Father's agreement." *Id.* Mother concludes that "[w]ithout joint custodial rights or a valid dispute between the parents warranting court intervention, any reliance on Section 5325(2) becomes moot." *Id.* at 20.[15]

Without addressing the substance of her claim, Appellees counter that Mother waived her challenge to Grandfather's standing. Appellees' Brief at 8. Appellees argue that

> the trial court entered a final custody order dated June 2, 2022, granting Grandfather standing and physical custody rights. … Mother failed to appeal the June 2, 2022, final custody order[,] which granted Grandfather standing[. A]s such[,] Mother waived her ability to appeal a finding granting Grandfather standing. After various other proceedings and a final custody hearing[,] the court issued a final custody Order[,] dated October 7, 2024 ….

---

[15] The trial court did not address this issue in its Rule 1925(a) opinion.

- 15 -

> Mother offered no evidence that would lead the trial court to re-evaluate a factual change in circumstances that would warrant a change or to challenge Grandfather's standing[,] as found by the court prior to June 2, 2022.

*Id.* at 8-9 (citations omitted).

Preliminarily, we consider whether Mother has preserved her challenge to Grandfather's standing. In our memorandum quashing Mother's appeal from the trial court's September 7, 2022, order, we observed that "a custody order will be final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute **a complete resolution of the custody claims pending between the parties**." *S.P.*, 1417 MDA 2022 (unpublished memorandum at 4) (citation omitted; emphasis added). Because "the trial court scheduled [a] December 13, 2022[,] hearing to contemplate granting legal custody to [] Grandfather and increasing physical custody to [] Grandfather[,]" we concluded that the September 7, 2022, order was **not appealable**. *Id.*

Instantly, similar to the September 7, 2022, order, the trial court's June 2, 2022, order scheduled a "follow up hearing" for September 6, 2022, where the trial court explicitly stated, "the [c]ourt may at the follow up hearing give either [F]ather and/or [G]randfather expanded rights" "if there is any more game[-]playing by [M]other …." Order, 6/2/22, at 3; *see also* Trial Court Opinion, 12/9/24, at 2 (the trial court acknowledging that this Court determined "that there was no final order of custody yet, since the [trial] court indicated that it could still make changes to Father's or Grandfather's rights

- 16 -

….” (citation omitted)). Accordingly, Appellees' claim that Mother waived her challenge to Grandfather's standing by failing to appeal the June 2, 2022, order is meritless.

We further observe that Mother otherwise preserved her challenge to Grandfather's standing at several stages throughout the custody proceedings.

Pennsylvania Rule of Civil Procedure 1915.5 addresses matters of jurisdiction and standing in custody cases, providing as follows:

**(a) Question of Jurisdiction, Venue, or Standing.**

**(1)** A party shall raise jurisdiction of the person or venue by preliminary objection.

**(2)** A party may raise standing **by preliminary objection <u>or at a custody hearing or trial</u>**.

**(3)** The court may raise standing *sua sponte*.

**(4)** In a third-party plaintiff custody action in which standing has not been resolved by preliminary objection, the court shall address the third-party plaintiff's standing and include its standing decision in a written opinion or order.

Pa.R.C.P. 1915.5(a) (emphasis added).

Here, our review of the record discloses that Mother filed preliminary objections in Lebanon County on August 10, 2021, challenging Grandfather's standing to intervene, as well as several other purported defects in Grandfather's petition. ***See generally*** Preliminary Objections, 8/10/21. Further, at the September 6, 2022, custody hearing, Mother specifically argued that Grandfather lacked standing because the August 2021 custody order granted Mother "sole custody[.]" N.T., 9/6/22, at 8; ***see also M.W. v.***

***S.T.***, 196 A.3d 1065, 1071 (Pa. Super. 2018) ("[O]ur rules permit parties to raise issues related to standing beyond the 20-day period provided for preliminary objections." (citation omitted); Pa.R.C.P. 1915.5(a)(2) ("A party may raise standing by preliminary objection or **at a custody hearing or trial**." (emphasis added)).  Mother additionally challenged Grandfather's standing at the October 7, 2024, custody hearing, and in two motions to dismiss filed prior to that hearing.  ***See*** N.T., 1/7/24, at 9; Motion to Dismiss, 7/5/23, at 1 (unpaginated); Amended Motion to Dismiss, 7/12/23, at 1-2 (unpaginated).  Thus, Mother clearly and repeatedly preserved her challenge to Grandfather's standing.

Having concluded Mother preserved her first issue, we turn to the merits of her claim.  "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***M.S. v. J.D.***, 215 A.3d 595, 598 (Pa. Super. 2019).  In appeals from child custody decisions, "our plenary scope of review is of the broadest type[.]" ***Interest of K.N.L.***, 284 A.3d 121, 132 (Pa. 2022) (quotation marks omitted).  Additionally, issues involving statutory interpretation are questions of law over which "our review is plenary and non-deferential." ***A.S. v. Pennsylvania State Police***, 143 A.3d 896, 903 (Pa. 2016) (citations omitted); ***see also id.*** (stating that "[i]t is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent.").

Our Supreme Court has explained that

[s]tanding relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant be adversely affected, or aggrieved, in some way. Traditionally, this requirement is met where an individual demonstrates he or she has a substantial interest in the subject matter of the litigation that must be direct and immediate, rather than remote, and which distinguishes his interest from the common interest of other citizens. In Pennsylvania, the doctrine of standing is a judicially-created tool intended to winnow out litigants with no direct interest in the matter, and to otherwise protect against improper parties. Consequently, where the General Assembly expressly prescribes the parties who may pursue a particular course of action in Pennsylvania courts, legislative enactments may further enlarge or distill these judicially-applied principles. Standing is a threshold issue and must be resolved before proceeding to the merits of the underlying action.

***K.N.L.***, 284 A.3d at 136-37 (citations and quotation marks omitted); ***see also***

***C.G. v. J.H.***, 193 A.3d 891, 898 (Pa. 2018) (stating that standing "is a conceptually distinct legal question which has no bearing on the central issue within the custody action—who is entitled to physical and legal custody of a child in light of his or her best interests." (citation omitted)).

"**In child custody cases, the concept of standing is fluid** and differs from the typical determination regarding whether a party has a direct interest in the outcome of litigation." ***E.A. v. E.C.***, 259 A.3d 497, 501 (Pa. Super. 2021) (citation omitted; emphasis added); ***see also id.*** at 503 (stating that "standing in child custody may be inconstant[.]"). "[O]ur case law establishes that standing in child custody is indefinite and determined based upon the facts **when the issue is decided**." ***Id.*** at 502 (emphasis in original; citation omitted).

Importantly,

> principles of standing have been applied with **particular scrupulousness** because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

*Id.* at 501 (emphasis added) (quoting *M.W. v. S.T.*, 196 A.3d 1065, 1069 (Pa. Super. 2018)); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality) (stating the "liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized" by the law).

Pertinently, "[g]randparent standing to seek an order directing custody or visitation is a creature of statute, as grandparents generally lacked substantive rights at common law in relation to their grandchildren." *D.P. v. G.J.P.*, 146 A.3d 204, 212 n.13 (Pa. 2016) (citations omitted).

We reiterate that the statute Appellees invoked to establish Grandfather's standing, 23 Pa.C.S.A. § 5325(2), provides, in pertinent part, that

> grandparents … may file an action under this chapter for partial physical custody or supervised physical custody … where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child … have commenced a proceeding for custody[] and [ ] do not agree as to whether the grandparents … should have custody….

23 Pa.C.S.A. § 5325(2).

Having set forth the applicable law, we turn to Mother's claim that Father's lack of custody rights to Children proves fatal to Grandfather's standing claim. Although our review disclosed no published decisions addressing this issue, we find our non-precedential decision of *Lacer v. Selb*, 281 A.3d 1070 (Pa. Super. 2022) (unpublished memorandum),[16] instructive and persuasive.

In *Lacer*, the paternal grandparents (grandparents) of O.L. (child) filed a petition to intervene in a custody action between child's mother (Lacer) and father (J.B.). *Lacer v. Selb*, 281 A.3d 1070 (unpublished memorandum at 1). The *Lacer* Court summarized the pertinent facts that followed the granting of a protection from abuse (PFA)[17] order against J.B.:

> [Lacer] filed a custody complaint against J.B. [] in 2015. In December 2020, the court ordered that [Lacer] "shall be entitled to make health, schooling, and other major decisions on behalf of" [child]. Custody Order, filed Dec. 4, 2020. It further ordered that [J.B.] "shall be entitled to information concerning [] child's well-being and [Lacer] shall keep [J.B.] informed of [] child's health, progress in school, and general welfare" and "is entitled to receive directly from schools, health care providers, or other relevant sources, information concerning the child," but he could not "communicat[e] with [] child directly or indirectly through school online platforms or through school or healthcare personnel." *Id.* [J.B.] was "granted access to online school platforms so long as [he did] not communicate directly with [] child, and so long as [] child remain[ed] unaware of [J.B.'s] online presence." *Id.* The order further provided that "[w]hile the [PFA

---

[16] *See* Pa.R.A.P. 126(b) (providing this Court's unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value).

[17] *See* 23 Pa.C.S.A. §§ 6101-6122.

- 21 -

o]rder remains in place, [] child shall reside with [Lacer], and [Lacer] shall have sole physical custody of [] child." *Id.* The PFA order is in place until May 2023.

*Id.* (unpublished memorandum at 1-2).

Grandparents petitioned to intervene, asserting standing pursuant to Section 5325(2). *Id.* (unpublished memorandum at 2). Lacer filed a preliminary objection to grandparents' standing, arguing "that under Section 5325(2)(ii), the parents' disagreement must be in the present tense, and currently [J.B.] 'can have no input as to the best interests of [c]hild.'" *Id.* (unpublished memorandum at 3) (record citation omitted). The trial court sustained Lacer's preliminary objection. *Id.* On appeal, grandparents argued that the facts of their case, "where one parent lacks the custodial rights to be able to facilitate a relationship between the child and the grandparents, would be an example of a situation Section 5325(2) is meant to address." *Id.* (unpublished memorandum at 5).

In affirming the trial court, the *Lacer* Court observed that the Child Custody Act (the Act), 23 Pa.C.S.A. § 5321, *et seq.*, "defines 'legal custody' as 'the right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions.' It defines 'sole legal custody' as 'the right of one individual to exclusive legal custody of the child.'" *Id.* (unpublished memorandum at 5) (quoting 23 Pa.C.S.A. § 5322).

Considering the language of the Act in conjunction with our holding in

*E.A.*, *supra*, the *Lacer* Court concluded the trial court did not err in granting

Lacer's preliminary objection:

> In *E.A.* …, this Court concluded that the requirement that the parents "do not agree" was in the present tense, requiring a current disagreement, noting the words "do not make an exception to consider past disagreement." [*E.A.*, 259 A.3d at 504.] We concluded that "regardless of any prior disagreements between parents about a grandparent's ability to exercise partial custody, the [Act] does not extend standing to grandparents to file for partial physical custody under [Section 5325(2)] when the predicate disagreement no longer exists." *Id.*
>
> Here, when construing the Act, and giving effect to all of its provisions, it is clear that **where a parent has sole legal custody, such that they have the sole right to make "major decisions on behalf of the child," there can be no current disagreement between the parents about whether grandparents should have custody under the Act**. Therefore, the trial court did not err in finding [g]randparents lacked standing under Section 5325(2).

*Lacer*, 281 A.3d 1070 (unpublished memorandum at 6-7) (footnote omitted;

emphasis added). *But see id.* (unpublished memorandum at 7) (noting that

"the concept of standing in child custody cases is fluid and can be re-evaluated

if factual changes in circumstances occur." (quotation marks and citations

omitted)).

Persuaded by this reasoning, we conclude the trial court erred in

determining that Grandfather had standing to intervene pursuant to Section

5325(2). The August 2021 custody order, entered approximately a month

before the case was transferred to York County, vested sole legal and physical

custody of Children to Mother. As in *Lacer*, because Mother had sole legal

- 23 -

custody of Children when the trial court decided the issue of standing, there could "be no current disagreement between the parents about whether [Grandfather] should have custody under the Act." *See Lacer*, 281 A.3d 1070 (unpublished memorandum at 7); *see also E.A.*, 259 A.3d at 502 ("standing in child custody is indefinite and determined based upon the facts **when the issue is decided**." (emphasis in original; citation omitted)). Accordingly, Grandfather lacked standing under Section 5325(2) to intervene in the underlying child custody action, and we are constrained to reverse the trial court's October 22, 2024, final custody order as it pertains to Grandfather.[18]

In her second issue, Mother argues that "the trial court entered a presumption in favor of [Father] and assert[ed] parental rights on his behalf, shifting the burden of proof to [Mother] to disprove that [the psychological parent] doctrine[19] should apply in this case[.]" Mother's Brief at 29 (footnote added).

_____

[18] Based on our disposition of Mother's first issue, we need not address Mother's issues 5 or 6, which pertain solely to Grandfather.

[19] At the April 7, 2021, custody hearing, concerning the issue of Father's standing relative to A.P., the trial court stated that "[t]he question is whether [F]ather here is psychological father[,] *in loco parentis* or father by estoppel[,] whatever[] you want to call it[,] relative to [A.P.]" N.T., 4/7/25, at 9. We interpret the trial court's reference to "psychological father" as relating to standing under 23 Pa.C.S.A. § 5324(2) (providing that "[a] person who stands *in loco parentis* to the child" "may file an action under this chapter for any form of physical custody or legal custody[.]").

Mother cites no legal authority to support her claim, apart from noting that "[t]hreshold issues of standing are questions of law[.]" *Id.* at 36 (quoting *M.W.*, 196 a.3d at 1069). Accordingly, this claim is waived. *See Interest of D.C.*, 263 A.3d 326, 336 (Pa. Super. 2021) (stating that "each question an appellant raises is to be supported by discussion and analysis of pertinent authority," and recognizing that this Court "will not act as counsel and will not develop arguments on behalf of an appellant." (citations omitted)); *O.G. v. A.B.*, 234 A.3d 766, 777 (Pa. Super. 2020) (finding an appellant had waived for appellate review the issue of whether the trial court abused its discretion in making credibility determinations in a child custody matter, where the appellant failed "to develop [the issue] in the argument section of her brief with citations to relevant legal authority." (citation omitted)).

We consider Mother's third and fourth issues together, as they are related. In her third issue, the crux of Mother's argument is that the trial court delayed entry of a final custody order due to its alleged bias against Mother and in favor of Grandfather. *See generally* Mother's Brief at 37-40. Mother argues that the trial court delayed issuance of a final custody order "to interfere with [Mother's] fundamental parental rights." *Id.* at 37.

In her fourth issue, Mother argues that the trial court "repeatedly demonstrated a pattern of bias, ill will, and/or malice in its handling of [Mother's] case," denying Mother due process. *Id.* at 53. Mother premises her argument on the trial court's adverse rulings against her. *Id.* at 53-54.

Mother concludes that the trial court's refusal to recuse itself from the instant custody proceedings "undermine[d] the integrity of the judicial process and reflects a systemic denial of [Mother's] due process rights." *Id.*

Mother fails to support either argument with citation to relevant authority; therefore, both issues are waived.[20] *See Interest of D.C.*, 263 A.3d at 336; *O.G.*, 234 A.3d at 777. Even if preserved, however, these issues would entitle Mother to no relief.

"We review a trial court's decision to deny a motion to recuse for an abuse of discretion." *Interest of L.V.*, 209 A.3d 399, 415 (Pa. Super. 2019) (citation omitted).

> Indeed, our review of a trial court's denial of a motion to recuse is **exceptionally deferential**. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. A trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*Id.* (citations and quotation marks omitted; emphasis added).

"In order to prevail, … the party seeking recusal[] must satisfy the burden to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *In*

---

[20] Mother has additionally waived her claim that the trial court unduly delayed entry of a final custody order by raising the issue for the first time on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

*re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014) (citation and quotation marks omitted); *see also Ware v. U.S. Fid. & Guar. Co.*, 577 A.2d 902, 904 (Pa. Super. 1990) ("[A] mere recitation of unfavorable rulings … does not satisfy the [movant's] burden of proving judicial bias, prejudice or unfairness.").

Where a trial judge determines that he can be impartial, he "must then decide whether his … continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.  This is a personal and unreviewable decision that only the jurist can make."  *Commonwealth v. Kane*, 188 A.3d 1217, 1225 (Pa. Super. 2018) (citation omitted).

Here, in its Rule 1925(a) opinion, the trial court accurately and comprehensively detailed the tortuous procedural history delaying the trial court's entry of a final custody order in the instant case.  *See generally* Trial Court Opinion, 12/9/24, at 10-13.

Further, at the October 7, 2024, hearing, the trial court denied Mother's motion to disqualify, stating as follows:

> I want to make it clear on the record that I have no personal bias or prejudice either for or against any party or any counsel in this matter, [and] didn't have any *ex parte* communications.  I have no personal knowledge, … no economic interest, and yet I could recuse if circumstances would reveal that there's a reason why I should not participate.
>
> I'll put on the record that [M]other did file a … federal lawsuit.  I was concerned whether [the federal lawsuit] might affect recusal or disqualification, so I sought a formal opinion from the [Pennsylvania] Judicial Ethics Advisory Board.  They issued an opinion and indicated that just because there was a pending

federal lawsuit does not mean that I need to recuse. The recusal [decision] is up to me….

N.T., 10/7/24, at 3-4.

The trial court further justified its denial of Mother's motion to disqualify in its Rule 1925(a) opinion:

The [trial court] made determinations in prior proceedings involving Mother based on the law and on the facts presented. Likewise, the [trial court] assessed that [it] is able to conduct additional proceedings in an impartial manner, without personal bias or interest in the outcome. As the moving party, Mother had the burden to demonstrate that recusal was required. Because there is no *per se* failure of the test of impropriety based on an unhappy, *pro se* litigant's filing of a lawsuit naming a judge as a party[,] and given the facts and circumstances in this particular case, Mother did not meet her burden [of proving that recusal was required]. Therefore, the [trial] court did not err in denying Mother's … disqualification motion[].

Trial Court Opinion, 12/9/24, at 20 (citation omitted).

The trial court's factual findings are supported by the record, and its conclusion is sound. The record discloses that the trial court's delay in issuing a final custody order resulted, in large part, from the parties' numerous court filings. Further, the mere fact that the trial court issued rulings adverse to Mother's position is clearly not evidence of "judicial bias, prejudice or unfairness." *See Ware*, 577 A.2d at 904. Accordingly, Mother's third and fourth issues entitle her to no relief.

In her seventh issue, Mother argues that the trial court "abused its discretion by modifying custody provisions for Father without properly considering the potential harm to [C]hildren under 23 Pa.C.S.A. § 5330[

- 28 -

("Consideration of criminal charge")], … and by denying [Mother] notice and an opportunity to be heard." Mother's Brief at 45.

Mother failed to include this issue in her Rule 1925 concise statement; it is therefore waived. **See J.S. v. R.S.S.**, 231 A.3d 942, 951 (Pa. Super. 2020) (in a child custody case, finding that an appellant waived for appellate review his claim that the trial court erred by denying his motion to transfer child the matter out of state, where it was not included in his Rule 1925 concise statement); **In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (in an involuntary termination of parental rights case, finding that an appellant waived an issue on appeal for failing to include the issue in her Rule 1925 concise statement, stating, "[T]**his Court has no discretion in choosing whether to find waiver. Waiver is mandatory, and this Court may not craft *ad hoc* exceptions or engage in selective enforcement**." (citation omitted; emphasis added)).

Even if preserved, our review of the record discloses that the trial court adequately considered Children's safety, and did not grossly abuse its discretion in crafting a contact provision permitting limited communication between Father and Children. **See** N.T., 10/7/24, at 135 (the trial court finding that Father's convictions and incarceration "ma[ke] physical custody … in the near future an impossibility."); Order, 10/7/24, at 3 (the trial court indicating that "because of [Father's] conviction[s,] he would be *per se* a threat of safety to [C]hildren, [but] the [trial c]ourt does not believe that

phone or [Z]oom [video] contact affects the safety of [C]hildren ….”); *see also K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (recognizing our standard of review in custody cases is whether the trial court grossly abused its discretion). Accordingly, even if preserved, Mother's seventh issue would entitle her to no relief.

In her eighth issue, Mother argues the trial court erred by granting Grandfather sole legal and physical custody of Children during her period of incarceration in York County Prison, following her contempt adjudication. Mother's Brief at 48. Mother seeks relief in the form of discharge of the custody order as to Grandfather. *Id.* at 51.

As we have already determined that the October custody order as it relates to Grandfather cannot stand, and because the custody provision Mother complains of in the order has already expired, Mother's issue is moot. *See M.B.S. v. W.E.*, 232 A.3d 922, 928 (Pa. Super. 2020) (finding an appellant's child custody issues moot “because we are unable to provide the relief she seeks with an order that will have legal force or effect.”).

In her final issue, Mother claims the trial court erred by denying her motion for a change of venue. Mother's Brief at 51. Mother asserts that she “provided undisputed evidence that neither she, [C]hildren[,] nor any other party had ties to York County[.]” *Id.* at 52. According to Mother, the lack of “significant connections” the parties had to York County required a change of venue. *Id.* (citing *J.K. v. W.L.K.*, 102 A.3d 511, 516 (Pa. Super. 2014)).

Our standard of review of a trial court's denial of a request for change

of venue in a child custody case is well settled:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

**B.A.B. v. J.J.B.**, 166 A.3d 395, 403 (Pa. Super. 2017) (citations omitted);

**see also id.** at 405-06 ("Nothing is more detrimental to an effective resolution

of custody matters than constant revisitation by different judges in different

jurisdiction." (citation and brackets omitted)).

"[I]t is axiomatic that all counties within the Commonwealth maintain

subject matter jurisdiction of custody disputes." **Id.** at 401 n.10 (Pa. Super.

2017) (citation and quotation marks omitted).

Section 5427 of the Uniform Child Custody Jurisdiction and Enforcement

Act (UCCJEA), 23 Pa.C.S.A. § 5401, *et seq*., sets forth the factors a court must

consider in determining whether the court is an inconvenient forum for the

parties to a child custody dispute:

> **(a) General rule.--**A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.

**(b) Factors.--**Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child has resided outside this Commonwealth;
>
> (3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;
>
> (4) the relative financial circumstances of the parties;
>
> (5) any agreement of the parties as to which state should assume jurisdiction;
>
> (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>
> (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
> (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S.A. § 5427; **see also J.K.**, 102 A.3d at 513-14 ("[O]ur Legislature has determined that [the UCCJEA's] provisions 'allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among the courts of common pleas of this Commonwealth.'" (quoting 23 Pa.C.S.A. § 5471 ("Intrastate application")).

In **B.A.B.**, **supra**, this Court affirmed a Lebanon County trial court's denial of a mother's request to transfer venue of her child custody case to York County. **B.A.B.**, 166 A.3d at 404. The **B.A.B.** Court relied upon the trial court's thorough review of the statutory factors set forth in Section 5427(b), and, significantly, credited the trial court's determination that "mother's [] motion to change venue [was] not about convenience; it [was] a thinly veiled effort to obtain a new judge who she hope[d] w[ould] be more willing to buy into the narrative she proposes." **Id.** at 406 (capitalization modified; record citation omitted); **see also id.** ("Mother's subsequent recusal request, and her later attempts to transfer jurisdiction and venue to York County, provided evidentiary support for the trial court's finding that [m]other engaged in blatant forum-shopping." (quotation marks and record citation omitted).

Here, the trial court explained the underlying proceedings relevant to Mother's claim, and its rationale for denying Mother's motion for change of venue:

> The [trial] court denies that it erred or abused [its] discretion. Mother filed a[ ] motion for change of venue on June 21, 2024[,] … and presented it in custody motions court on July 2, 2024. Mother's motion indicated that [Mother] and Children had moved to Schuylkill County[, Pennsylvania,] more than six months prior, that no party retained significant connections with York County, that [Mother] could travel twenty-one miles less to court, and Grandfather's drive would be reduced by twenty-one miles. … At custody motions court, Grandfather objected to a change of venue for several reasons. First, the parties were in the middle of a custody litigation for which a custody pre-trial conference was scheduled for three days later on July 5, 2024. Grandfather argued that th[e trial] court had the knowledge and experience in the case and a change now would cause unjustifiable delay.

- 33 -

Grandfather indicated a desire to proceed to a final custody [proceeding]. Further, Grandfather argued that Mother had relocated without notice of relocation, essentially arguing that Mother had come to court with unclean hands. Mother argued that notice of relocation was not applicable[, acknowledging that she had moved with Children], and again argued th[e trial] court[′s] lack of jurisdiction, Grandfather's lack of standing, etc. The [trial] court considered its continuing jurisdiction; the parties lack of agreement; the distance between York County and Schuylkill County's Court of Common Pleas, saving the parties only 21 miles; the lack of any history or assertion of domestic violence between Mother and Grandfather; the length of time Children had resided outside [of] York County; and th[e trial] court's vastly greater familiarity with the facts and issues pending litigation of the parties than the Schuylkill County Court; *etc*. In weighing the factors pursuant to 23 Pa.C.S.A. 5427(b), the court decided not to relinquish its continuing jurisdiction and denied Mother's motion to change venue. Thus, the court denies error in this matter.

Trial Court Opinion, 12/9/24, at 14-15.

The trial court's factual findings are supported by the record and its conclusion is sound. Upon review, we determine the trial court did not err in its application of Section 5427's statutory factors, or abuse its discretion in denying Mother's request for a change of venue. **See B.A.B.**, 166 A.3d at 403. Accordingly, Mother's final issue merits no relief.

Based upon the foregoing, we reverse the trial court's October 22, 2024, custody order as it relates to Grandfather. The remaining provision of the order permitting Father telephonic and/or video communication with Children, consistent with the regulations and protocols of the Department of Corrections, is affirmed.

Order reversed in part, and affirmed in part. Jurisdiction relinquished.

- 34 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>05/16/2025</u>